30 So.2d 10

GADSDEN IRON WORKS, Inc., v.
BEASLEY et al.

7 Div. 887.

Supreme Court of Alabama.
April 10, 1947.

See, also, 247 Ala. 180, 24 So.2d 540.

Lusk & Burns, of Gadsden, and Benners, Burr, Stokely & McKamy and M. L. Taliaferro, all of Birmingham, for appellant.

Joe Brown, of Gadsden, for appellee.

LIVINGSTON, Justice.

Certiorari to review the ruling of the Circuit Court of Etowah County in a workmen's compensation case.

The action is by the widow and dependent children of John Beasley, deceased. Compliance with the technical rules as to pleading is not required in action under the Workmen's Compensation Law. Code 1940, Tit. 26, § 253 et seq. Sloss-Sheffield S. & I. Co. v. Watts, 236 Ala. 636, 184 So. 201; Randle v. Dumas, 229 Ala. 396, 157 So. 218; Alabama Concrete Pipe Co. v. Berry, 226 Ala. 204, 146 So. 271; Ex parte Coleman, 211 Ala. 248, 100 So. 114; Ex parte National Pipe Co., 213 Ala. 605, 105 So. 693. Under these authorities, we hold that the petition in the instant case was sufficient, and not subject to the demurrers interposed.

The decree of the circuit court awarding compensation to petitioners for the death

of their husband and father embodied recitations from the evidence, findings of fact and conclusions of law.

The chief difference between the parties arises on the question of whether the death of petitioners' husband and father was caused by an accident growing out of and in the course of his employment. Section 253, Title 26, Code.

In pertinent part, the decree of the trial court recites: "It appears from the pleadings, evidence and admissions in this case that on July 12, 1945, and for several years next prior thereto, John Beasley, plaintiff's intestate, was an employee of the defendant, Gadsden Iron Works, as a pipe rammer or molder at defendant's plant in Gadsden, Etowah County, Alabama, within the jurisdiction of this court, and was on said day, towit, July 12, 1945, engaged in making sand flask or molds with the assistance of a fellow employee for the defendant, that each of said sand flask or molds weighed (370) three hundred and seventy pounds or more, that they were long and had two handles at each end by means of which they were, after having been made, lifted and carried by plaintiff's intestate and his said fellow employee a distance of from ten to fifteen feet and there deposited to be later filled with liquid or melted iron, which in turn became iron pipe, and when so made were stacked on the outside of the building in which said plaintiff's intestate was doing his work for defendant, but left in close proximity to said building and there allowed to cool.

"The evidence further shows that plaintiff's intestate and his fellow employee then and there assisting him were an hour late on said morning in starting their said work at defendant's said plant, but notwithstanding this, they had labored so hard, fast and uninterrupted that by eleven o'clock A.M. of said day they had made fifty or more of said sand flask or molds, had lifted and carried them as aforesaid, a distance of from ten to fifteen feet, this being the average number so made when they would or did start their said work an hour earlier. The evidence further shows that said flask or molds were made out of wet sand and packed into said flask or molds with a heavy iron hammer which weighed about seven pounds.

"The evidence further shows that around eleven o'clock on said morning, towit, July 12, 1945, the plaintiff's intestate and his fellow employee ate their lunch within said building wherein they were working, which took them from ten to fifteen minutes, and that immediately after having eaten their said lunch returned to their said work of making sand flasks or molds and had worked for only a few minutes until plaintiff's intestate made known to his fellow employee that a pain struck him in his breast (indicating with his hand) just where the pain was, but kept on working until he collapsed and died on the job.

"The evidence further shows that plaintiff's intestate was a large husky looking man weighing around two hundred pounds; that he had been doing hard manual labor all his life without interruption but for a few days or weeks when he remained at his home near Altoona, Alabama, and was treated there by his family physician, Dr. Samuels, who as a witness for the plaintiff after his qualifications were admitted, stated that in the Spring of 1945, around crop planting time, he attended said deceased for shortness of breath or smothering as complained about by plaintiff's intestate; his trouble he diagnosed as heart trouble, but after he had treated him for a few days or week or so, he dismissed around the latter part of May and he returned to his work for defendant about the first of June, 1945, and there continued to work for defendant, making sand flasks or molds up to and including the day of his death, without having made any further complaint to his said family doctor or any other doctor or person about his physical condition. * * *

"The evidence also shows, and was admitted by defendant, that plaintiff's intestate was on July 12, 1945, in its employ and had notice and actual knowledge of said accident and resulting death, but denied liability therefor.

"The evidence also shows that plaintiff's intestate performed his duties for defendant in a large building with windows and six or seven doors, the doors and some of the

windows were open on said day. That said building was covered with sheet iron, and had within machinery, much of it made of iron, and a large cupola used to melt iron which was poured into said sand molds and made into pipes, which when made were carried outside the building, but within close proximity thereto, stacked and allowed to cool. That said cupola had not been heated on said day but had been heated the preceding day and the 'bottom knocked out' about four o'clock P.M., and that it was much hotter in the building where plaintiff's intestate did his work than on the outside of said building; some evidence however being to the effect that it was not much hotter on the inside than on the outside of building. Also, that there were other buildings extending entirely around said building, except the front, that were higher than the first or lower windows in said building which obstructed flow of air into and out of said building.

"The court finds that plaintiff's intestate, Mr. John Beasley, and the defendant were at all times alleged in the petition subject to the provisions of the Workmen's Compensation Law of Alabama. The court further finds from the evidence after carefully hearing same that, plaintiff's intestate suffered an injury from which he died as a result of an accident arising out of and in the course of his employment for defendant at about 11:15 o'clock on the morning of July 12, 1945, and as a proximate result of said accident he died, and of said accidental death the defendant then and there had notice and actual knowledge. The court finds that through heat exhaustion, excessive weight lifting and excessive labor over a period of hours from six or seven o'clock in the morning until eleven o'clock on the same morning by the workman Beasley, who, from the history of his case by his family physician, Dr. Samuels, was suffering from heart trouble at the time, the court finds that through this heat or excessive work and the lifting engaged in while working for the said defendant company that his heart attack was proximately caused by said condition due to said heat or heavy work, one or both. * * * And the court doesn't say that it was the heat or the heavy work, but is reasonably satisfied that it was a combination of both and brought on his death, and so finds, after considering the situation, and the fact that he and his fellow employee had made fifty of these things (sand molds) in those few hours in July 12, 1945, wherein were heat making machines within close proximity to him, together with the natural hazard of heat exhaustion on a day of the same temperature as existed on this said date was increased and aggravated, and the deceased was thereby subjected to an increased risk of injury from heat exhaustion which was substantially beyond the normal risk to which the average workman engaged in similar employment would be subjected. And as stated, the court finds from the evidence that the heat exhaustion suffered by this plaintiff together with the heavy lifting and hard work suffered by plaintiff's intestate at said time and place was caused by said increased or aggravated risk."

The trial court found in effect that Beasley died from heat exhaustion caused by the heat in the building where he worked together with the manner in which he performed his duties on the day of his death, both acting upon a previously impaired heart.

The rule governing such cases in this jurisdiction is stated in Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565, 569, as follows:

"If the heat exhaustion arose out of the employment, as well as in its course, we think it is clear that any harmful effect upon the physical structure of the body of the employee, which was a proximate result of it, is an accident under our statute. Section 7596 (i), Code [Code 1940, Tit. 26, § 262 (i)]; Gulf States Creosoting Co. v. Walker, 224 Ala. 104, 139 So. 261; New River Coal Co. v. Files, 215 Ala. 64, 109 So. 360; 1 Honnold on Workmen's Compensation, p. 281, § 86.

"In connection with the sort of accident here involved, the principle to which most authorities give assent is that the harmful condition does arise out of the employment, if, in the performance of the duties for which he was engaged, in the manner required or contemplated by the employer, it is necessary for the employee to expose

himself to a danger, materially in excess of that to which people commonly in that locality are exposed, when not situated as he is when thus performing his service, and that such excessive exposure may be found to have been the direct cause of the injury, though operating upon other conditions of common exposure. American Fuel & Clay Products Co. v. Gilbert, 221 Ala. 44, 127 So. 540; Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532.

"That principle has been specifically thus applied to sunstroke or heat prostration or heat exhaustion in many varying conditions. The authorities in the main adopt and apply it substantially as we have thus stated. It would serve no good purpose to refer to the discussions and various applications of the principle. Many cases are analyzed in texts and notes as follows: 1 Schneider's Workmen's Compensation Law (2d Ed.) pp. 701 to 710; Honnold's Workmen's Compensation, p. 428; 13 A.L.R. 979; 53 A.L.R. 1085; 46 A.L.R. 1218; 25 A.L.R. 147; 16 A.L.R. 1038, 1039."

But it is strenuously argued that the evidence does not justify the findings of the trial court.

This review by certiorari does not perform the functions of an appeal, and we are not concerned with whether the finding of facts is proper, if it is supported by any legal evidence. Gulf States Steel Co. v. Christison, supra; Ex parte Big Four Coal Mining Co., 213 Ala. 305, 104 So. 764; Wilson v. Birmingham Electric Co., 219 Ala. 436, 122 So. 411; Dean v. Stockham Pipe & Fittings Co., 220 Ala. 25, 123 So. 225; Morgan-Hill Paving Co. v. Stewart, 220 Ala. 480, 126 So. 118.

We have held that compensation is not limited to those in perfect health. The test is, was the accident a proximate contributing cause acting upon the particular individual to produce death, whether directly or through disease? New River Coal Co. v. Files, 215 Ala. 64, 109 So. 360.

The most that can be said of the fact that Beasley, in approximately four hours time, performed work usually requiring five hours, is that he thereby contributed to his injury. Neither contributory negligence nor assumption of risk is a defense in workmen compensation cases,—Section 254, Title 26, Code; and from aught appearing from the record, he violated no rule in so performing his work.

We think it is quite clear that there was no heat generating machinery in operation in the building where he worked on the day Beasley died. But, on the other hand, there is evidence that the temperature in the building was higher than the temperature on the outside; that there was warm sand in said building, and that the building in which Beasley worked was surrounded by other buildings, except on the front side thereof.

After a careful consideration of the evidence we cannot say that there was a total lack of evidence to support the finding of the trial court to the effect that, in the performance of the duties for which he was engaged, in the manner required or contemplated by the employer, it was necessary for Beasley to expose himself to a danger, materially in excess of that to which people commonly in that locality were exposed, when not situated as he was when thus performing his duties; and that such excessive exposure was the direct cause of his death, though operating upon other conditions of common exposure and upon a weakened heart condition, and that his death was caused by an accident arising out of his employment.

The cause is due to be, and is, affirmed.

Affirmed.

GARDNER, C. J., and BROWN and SIMPSON, JJ., concur.