36 So.2d 513

### INGALLS SHIPBUILDING CORPORATION v. CAHELA.
### 6 Div. 684.

Supreme Court of Alabama.
April 22, 1948.

Rehearing Denied July 31, 1948.

London & Yancey, Geo. W. Yancey and Jas. E. Clark, all of Birmingham, for appellant.

Dryer & Dryer, of Birmingham, for appellee.

FOSTER, Justice.

The question in this case is whether the employee, Cahela, is barred by limitations of one year under section 296, Title 26, Code, from proceeding under section 304, for enforcing a claim for partial disability under Article 2, Title 26, Code.

The court found that the employee, whom we will designate as plaintiff, received an injury while he was employed by defendant as the result of an accident which occurred on September 15, 1944, and which arose out of and in the course of his employment by defendant. We omit routine findings. But the findings, affecting the issues as made, are that after such accident medical and surgical aid were furnished him by defendant's workmen's compensation insurance carrier, extending to August 17, 1945. That just prior to February 22, 1946, the representative of the insurance carrier of the corporation (defendant) informed plaintiff that his claim was barred by the statute of limitations, and an agreement was entered into between the parties for a lump sum settlement, with the petition itself showing that the settlement was made on the theory that the claim was barred by the statute of limitations. This settlement was approved by the Circuit Court of Jefferson County, Alabama, February 22, 1946. On motion of the plaintiff, filed March 22, 1946, this settlement was set aside on July 10, 1946, and a new trial ordered. This ruling was reviewed by mandamus by the Court of Appeals, and on January 21, 1947, mandamus was refused in an opinion holding that there was no error in the order. Ex parte Ingalls Shipbuilding Corporation, 32 Ala.App. 609, 28 So.2d 808.

The cause was then placed on the regular trial docket, and set for trial on August 14, 1947, and came on for trial August 15, 1947. On that day plaintiff filed in the cause a verified petition for compensation as provided in section 304, Title 26, Code. That petition referred to the settlement which had been approved, alleging that the approval was set aside and a new trial ordered; and that a petition for a writ of mandamus was presented to the Court of Appeals, and that the writ was denied.

The petition filed on April 15, 1947, did not seek a new trial of the matter of approving the settlement, but only sought compensation as if no such settlement had been made under section 278, Title 26, (Pocket Part) Code. For a settlement in an amount less than the benefits stipulated in that article to be valid, a circuit judge must determine the bona fides of the claim

and the liability of defendant, and that it is for the best interests of the employee to accept a lesser sum; and that any settlement may be vacated for fraud, undue influence, or coercion upon application made to the judge approving the settlement at any time not later than six months after the date of settlement; and that all moneys voluntarily paid by the employer or insurance carrier to the injured employee in advance of agreement or award shall be treated as advance payments on account of the compensation; but such payments shall not be construed as an admission of liability, but shall be without prejudice.

Defendant made special appearance for the purpose of contending that there was nothing before the court subject to amendment; and that plaintiff by said amendment had repudiated the agreement of settlement and had paid into court the sum of $400.00, paid under said settlement, and defendant had received from the clerk said sum; and also moved to strike the amendment asserting substantially the same grounds. The court overruled said objection and motion to strike. Whereupon defendant demurred to the petition assigning several grounds. One was that the proceedings are at an end; also that it appears to be barred by limitations. This demurrer was overruled.

The defendant then filed an answer putting in issue the allegations of the petition and included in it a plea of the statute of limitations; also alleging that plaintiff had previously sustained an injury which contributed to his disability as claimed by him; also that he sustained a subsequent injury while in the employment of another, which materially increased any permanent partial disability already then existing.

The court made a finding of facts, and ruled that the claim was not barred, for that defendant had provided compensation by way of medical services and appliances within twelve months before February 22, 1946, and fixed the amount of his award.

The first matter argued by the defendant on its petition for certiorari is the statute of limitations. That is section 296, Title 26, Code. It provides a limitation of one year after the accident, unless within one year after the accident the parties shall agree upon the compensation, or unless

one of the parties within one year after the accident shall have filed a verified claim under section 304, Title 26, Code; but when payments of compensation have been made in any case said limitations shall not take effect until the expiration of one year from the time of making the last payment.

It will be observed that the accident occurred September 15, 1944. The petition under section 304, supra, was filed April 15, 1947. Plaintiff contends that this is but an amendment of the proceedings for approval of the settlement had February 22, 1946, and related back to that date; and that although no other compensation payments had been made to plaintiff prior to that time, payments had been made for medical services and appliances and hospital expense and medicine up to August 17, 1945, as found by the court; and that it was not a year from that date to February 22, 1946. The defendant, petitioner here, contends that such medical payments were not "payments of compensation" under section 296, supra; and that if they were so at all, they were not so after the first ninety days after the disability under section 293, Title 26, as amended (Pocket Part) Code. Therefore that since the accident occurred September 15, 1944, ninety days thereafter would be December 14, 1944, which was more than one year before February 22, 1946. After December 14, 1944, defendant was not legally due to pay for such medical attention, though under section 293, as amended, he could do so if he so elects, and the employee accepts same. Therefore, defendant contends that such payments were in the nature of a gratuity, and not compensation, as defined in section 262, Title 26, (Pocket Part) Code.

Section 262, supra, defines "compensation" as "the money benefits to be paid on account of injury or death." We have no trouble in holding that the provisions of section 293, supra, requiring the payments of "the actual cost of the reasonably necessary medical and surgical treatment and attention, medicine, medical and surgical supplies, crutches and apparatus, as may be obtained by the injured employee during the first ninety days of disability," when paid by the employer or his insurance carrier on account of the injury, either to the

injured employee or to those furnishing such treatment and supplies, are sufficient payments of compensation to meet the provisions of section 296, supra. But those payments made within said ninety days were completed more than one year before February 22, 1946. Our difficulty is whether payments of that sort made after the ninety day period constitute compensation under section 296, as defined by section 262, supra.

We have noted that section 293, supra, as amended, authorizes the employer after the expiration of ninety days, to furnish to the injured employee such treatment and supplies if the employee shall accept the same. There is no duty so imposed.

The trial court in holding that the payments made after the ninety day period were compensation under section 296, supra, cited Moss v. Stanbridge, 215 Ala. 237, 110 So. 17, and that when the employer acknowledges liability and continues payment of compensation, the statute has provided that by such acknowledgment the period is extended to one year from the last payment. In that case it does not appear that the employer continued to pay compensation after the period fixed by law in which such payments shall be made. The question was the effect of payment of compensation for an injury upon the provision of section 283, supra, when death resulted more than three years after the injury. It was said that payments had been made to him of all compensation due him from the time of the injury to the date of his death.

In this case the trial court reasoned that "each time medical treatment is furnished (though after the ninety days, and when there was no legal obligation to do so), there is an acknowledgment by the employer that there was an injury for which the employer is responsible, and an employee should have a right to assume that, so long as the employer continues to furnish medical treatment, his claim is open for final adjustment." And we may add that this is so by that argument, though no other payment of compensation had been made from September 15, 1944, to February 22, 1946, when the settlement was approved.

Section 278, supra, as amended (see, Pocket Part) provides that, "all moneys voluntarily paid by the employer or insurance carrier to an injured employee in advance of agreement or award shall be treated as advance payments on account of compensation; to encourage advance payments it is expressly provided that such payments shall not be construed as an admission of liability." This Court held that a payment of funeral expenses in excess of liability should not be treated as a credit on compensation. Southern Cement Co. v. Walthall, 217 Ala. 645, 117 So. 17.

In McEneny v. S. S. Kresge Co., 333 Mo. 817, 62 S.W.2d 1067, the Missouri court held that medical treatment should be considered as a part of the compensation the employee shall receive by reason of a statute very similar to our section 293, supra. In a later case, cited in the opinion of the trial court in this case, Thomas v. Baker Lockwood Mfg. Co., 236 Mo.App. 1248, 163 S.W.2d 117, it was also said that if claimant has a compensable injury he is entitled to such medical and hospital treatment as the statute allows as a part of the compensation due; and that such payments are made on account of the injury so as to toll the statute of limitations. In that case the accident occurred June 15, 1939, the medical treatment provided by the employer and insurer terminated June 5, 1940. This was more than six months after the expiration of ninety days from the date of the accident. The limitation then was six months. It was changed in 1941 to one year.

The difficulty dealt with by the court was not whether the medical expense which was furnished after the ninety days was compensation, but whether the date extended from the actual payment for them by the employer or from the date the services were rendered. In reliance upon the former decision of that court, McEneny v. S. S. Kresge Co., supra, it was held that the effective date was that of the rendition of the services and not that of payment for them. In a later case from Missouri, Buecker v. Roberts, Mo.App., 200 S.W.2d 529, 533, the question was again before the Missouri court. The accident occurred

January 25, 1939, and the medical services extended beyond the ninety day period. The proceeding was begun January 10, 1944. This date was much more than a year after the ninety days immediately following the date of the accident. The evidence was not very satisfactory as to the services rendered, and the case was reversed and remanded to provide more evidence. But this was said in the opinion: "The employer through Dr. Jeter had furnished medical, surgical and hospital treatment to claimant for the first 90 days (and more) after the injury, and thereafter he was not required to furnish additional similar treatment except as the Commission by special order determined to be necessary. The Commission was never asked to and made no such special order. But if the employer through its authorized agent, Dr. Jeter, authorized, consented to, ratified or acquiesced in additional similar treatment, such would toll the limitation period." When these Missouri cases were decided, the statute of that state copied in that opinion was substantially the same here material as our section 293, supra, without the added provision in that statute as to furnishing such services after ninety days. And their statute of limitations, then changed to one year, was similar to our section 296, supra, here material, except that the proviso which tolled the limitation was in the following language, "or in case payments have been made on account of the injury or death, within one year from the date of the last payment." Mo.R.S.A. § 3727.

Our statute, instead of saying, "payments have been made on account of the injury or death," says "payments of compensation have been made in any case." But we are reminded again that by section 262, supra, "'compensation' means the money benefits to be paid on account of injury or death." We do not think that the difference is material. The medical expense furnished and paid for after ninety days is a money benefit authorized to be made by section 293, supra, as amended, "on account of the injury or death."

█ We view the case as directly in point, and is based upon a reasonable interpretation of the statutes in question.

Some other states having statutes somewhat similar hold that such expenses are not compensation.

In the case of Royer v. United States Sugar Corp., 148 Fla. 537, 4 So.2d 692, 693, the Supreme Court of Florida had the question, citing its statute of limitations as providing a bar of one year for compensation after the last payment was made. The question was whether payment for hospitalization and doctors' bills is compensation under their statute. The ninety day element was not involved. Compensation was defined by the act as "the money allowance payable to an employee or to his dependents as provided for in this Act." F.S.A. § 440.02(11). It is said that section 13, F.S.A. § 440.13, treats compensation as separate and distinct from doctors' bills and hospitalization. It was in that case approximately two years between the date of payment of the first and second amounts for such service, and the latter was paid with the understanding that no "compensation" would be paid. But citing other cases, they held that such service is not compensation as contemplated by the Act. We have examined the cases cited in that connection. We do not regard them as direct authority to that effect. The question in many of them was whether such payments worked an estoppel, the statute of limitations not providing that payments shall toll it. The cases so cited are those relied on by petitioner here.

In Marshall v. Pletz, 317 U.S. 383, 63 S.Ct. 284, 87 L.Ed 348, in dealing with a similar situation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., the United States Supreme Court held that medical care was not compensation, in a proper analysis of that Act. It quoted section 7, making provision for medical services authorizing a suspension of such services for certain reasons, and calling attention to the fact that the employer furnishes the services and does not pay the employee except when the employer omits to furnish service. But our section 293, supra, is that "in addition to the compensation herein provided, the employer shall pay the actual cost of reasonably necessary medical and surgical treatment," etc., and that "if the

employer furnishes such medical and surgical attention and supplies during such ninety day period he shall not be liable under this section, except for such of said services and supplies as may, in an emergency, be procured by the employee elsewhere." There is some difference between that situation and the one described in Marshall v. Pletz, supra. There may or may not be enough to justify a different interpretation of them. But we think, in agreement with the Supreme Court of Missouri, that payment for such services or supplying them "on account of the injury or death," should be treated as the payment of compensation to toll the limitations in section 296, supra.

It is also contended that the date on which the petition of the claimant was filed, April 15, 1947, should be the effective day on which to compute the statute of limitations, and not February 22, 1946, the date on which the circuit court was called upon for the order of approval. It is contended that when the order of approval was set aside and a new trial ordered by the court, the only question was whether the agreement should be approved on another trial; and that both parties treated that as no longer before the court, since the claimant paid the $400.00 into court, as ordered, and the employer accepted it, thereby effectually terminating the contract, so that there was then nothing before the court. We are not cited to a case directly on that subject. However, in the case of Burger-Phillips Co. v. Phillips, 234 Ala. 563, 176 So. 181, this procedure was adopted without question.

The principle involved bears much resemblance to that given effect in Birmingham Belt R. R. Co. v. Ellenburg 215 Ala. 395, 111 So. 219. In that case a suit was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. There was a trial resulting in a judgment for plaintiff. On appeal this Court reversed and held that the proper action should be under the Workmen's Compensation Act of Alabama. The original count was not verified, the amendment was verified, as required by that Act. Objection was made as being a complete departure, and that the original complaint was not verified, and the complaint as amended and verified was filed more than a year after the accident. The statute of one year was otherwise set up. The court overruled defendant in these contentions, and made an award. This Court on appeal dealt with the question of limitations, and held that the amendment was proper and related back to the date when the suit was first begun: that section 296 (section 7570, Code of 1923) is a statute of limitations. That it is not a condition to the right. The Court approved the amendment, and held against the bar of the statute because the original suit was a claim for damages for the same injury, the same transaction, and between the same parties, as that in the amended complaint.

The instant case first came before the circuit court on February 22, 1946, pursuant to section 278, Title 26, as amended (Pocket Part) Code. On that day the insurance carrier having persuaded claimant, who had no lawyer, that his claim was barred, agreed with him on a settlement for $400.00, greatly less than the compensation provided by statute, and presented it to a judge of the circuit court, and he approved it. That statute provides that the court shall not approve it unless he has first made inquiry into the bona fides of claimant's claim, and the liability of defendant, and if deemed advisable may hold a hearing thereon. So that on that day, the court was to pass on the bona fides of the claim and the liability of defendant concerning the identical claim for the same injury later presented in a different form. The proceedings on February 22, 1946, presented the facts and extent of liability to the court, and whether the agreement was in the best interest of the employee. This embraced matter involved in a petition under section 304, supra. Application was made to set the approval aside, and this was granted. That left before the court for further trial the question of whether the agreement was in the best interest of the claimant. The proceeding was not then ended. And that did not follow simply because the claimant paid the money back into court as ordered by the court as a condition to setting aside the approval, and its acceptance by defendant only placed the parties as they were when the proceeding

began. There was no formal agreement or order setting aside the agreement which had been made, though the parties so treated it. But it was still before the court not disposed of by the court and on the trial docket when the amendment was filed. We think it was properly allowed and related back to February 22, 1946, under the case of Birmingham Belt R. R. Co. v. Ellenburg, supra.

It is next insisted that the court in fixing the amount of the award did not give due consideration to section 288, Title 26, Code, which provides that "if the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed." We call attention to section 279 (E), subds. 1 and 2, Title 26, as follows:

"If an employee has a permanent disability or has previously sustained another injury than that in which he received a subsequent permanent injury by accident such as is specified in the sections herein defining permanent injury, he shall be entitled to compensation only for the degree of injury that would have resulted from the latter accident if the earlier disability or injury had not existed."

"If an employee has previously lost the sight of one eye or lost one leg or lost one arm, and thereafter in the same employment or in the employment of another he should by accident receive additional injuries so as to proximately cause the loss of sight of both eyes or the loss of both legs or the loss of both arms, said employee shall receive three fourths of the amount provided hereunder for one who has received a permanent total disability and there shall be credited on said three fourths amount any payments which said employee had received or may receive for his first disability."

The Court in its findings observed:

"They further testified that since the plaintiff had been able to do his regular heavy work prior to the injury and had not been able to do it since the injury, the arthritic condition was probably ac-, tivated by the injury. There was also testimony by the experts that in spite of the fact that the X-rays of the plaintiff showed an arthritic condition, it might not have been disabling for an indefinite period of time, possibly months, possibly years, had not the injury intervened to activate the patent condition. The testimony shows that the plaintiff had worked for a number of years prior to the accident at hard manual work; that he had had no trouble with his back previous to this injury except a slight sprain of his back about one year prior to the injury, which disabled him less than one week, and that since this slight sprain he had worked regularly without any discomfort or pain at his regular work of pipe fitting, but that since the injury he had been unable to do any work which caused any strain whatever on his back such as lifting or stooping or bending his back and that on every job he had held since the injury the other workmen had helped him to do his work and he was supported in this by two witnesses who had recently worked with him while he was handling a job as a carpenter."

The Court therefore concluded: "It should be said that the accident was the proximate contributing cause acting upon the particular individual (plaintiff) to produce the disability to work, either directly or through disease under the rule laid down in the Files case, infra. The Court further finds and concludes that the plaintiff had sustained a permanent partial loss of earning capacity amounting to 30%."

Petitioner challenges the correctness of such conclusion as a proper application of section 288, supra, to the employee's dormant condition of infirmity shown to exist at the time of the accident. The argument is that no such statute as section 288, supra, is referred to in the cases which hold that if the accident acted upon the particular individual who was in apparent good health, but who had a dormant infirmity which did not interfere with his work, and after the accident he was unable to work, or was partially disabled, furnished some evidence of causal connection between the accident and the disability following the accident. New River Coal Co. v. Files, 215 Ala. 64, 109 So. 360; Walker

v. Minnesota Steel Co., 167 Minn. 475, 209 N.W. 635; Warlop v. Western Coal & Mining Co., 8 Cir., 24 F.2d 926; Gadsden Iron Works v. Beasley, 249 Ala. 115, 30 So.2d 10.

In Walker v. Minnesota Steel Co., supra, the Minnesota court observed that: "Latent and unknown tendencies to disease are common, and the Legislature in passing this law (Workmen's Compensation Law) must have had in mind the fact that such latent ailments or maladies may develop into serious conditions if incited to activity because of what might otherwise be regarded as trivial accidental injuries in the course of employment." Also that "an actual aggravation of an existing infirmity, caused by an accident in the course of employment, is compensable even though the accident would have caused no injury to a normal person." Also that "the claim for compensation in this case depends upon whether or not the paresis, which was primarily caused by syphilis was lightened up or accelerated by the injuries to employee's head." The court was dealing with the law as found in the General Statute of Minnesota of 1923. In it there is no such statute as our section 288, supra. But section 4276 of those statutes, M.S.A. § 176, 13, similar to our section 279(E), subd. 1, Title 26, Code, provided that if the injury would only cause permanent partial disability, but which combined with a previous disability does in fact cause permanent total disability, the employer shall be liable for permanent partial disability caused by the subsequent injury. The state was to pay the remainder of the compensation. This case did not discuss in this connection the amount of compensation caused by such latent condition.

As said in our case of New River Coal Co. v. Files, supra, Gadsden Iron Works v. Beasley, supra, and in Warlop v. Western Coal & Mining Co., 8 Cir., 24 F.2d 926, this Act (Workmen's Compensation Law) is not limited to healthy employees. The court in the latter case was dealing with a Kansas statute which referred to no such provision as our section 288, supra. It observed that if the disease would not have developed without the accidental injury that must be regarded as the contributing proximate cause. Other authorities hold to that view. 1 Schneider Workmen's Compensation, section 290, pages 952, 953; section 138; Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L.R.A.1918F, 862; Fox v. United Chemical & Organic Products Co., 147 La. 865, 86 So. 311. They do not discuss the question of whether the amount of compensation is affected by an accident working on a latent infirmity. But in 1 Honnold on Workmen's Compensation, section 98, at pages 302, 304, we find the following:

"It is fundamental principle that the employer takes the employee subject to his physical condition when he enters his employment. Compensation losses are not made solely for the protection of employees in normal physical condition, but for those also who are subnormal, except in exaggerated cases where, in consequence of constitutional diseases or disorders, such as tuberculosis, syphilis, an injured workman suffers for a period far beyond what would be the case if he were in ordinary health, in which cases compensation will be awarded only for the longest period of disability for which a normal person sustaining the same accidental injury would reasonably be disabled.

"The Compensation Act does not make any exception for cases of injury to men whose health is impaired or below the normal standard. Neither does it except from its benefits the man who carried in his body a latent disease which in case of injury may retard or prevent recovery. It applies to every man who suffers disability from accidental injury, and does not exclude the weak or less fortunate physically."

In our case of Southern Cement Co. v. Walthall, 217 Ala. 645, 117 So. 17, it was stated that section 288, supra, has no reference to death benefits but only disability benefits. To like effect is Crescent Coal Co. v. Simmons, 217 Ala. 367, 116 So. 512; United States Cast Iron Pipe & Foundry Co. v. Hartley, 217 Ala. 462, 116 So. 666. See, also, Paterson v. Wisener, 218 Ala. 137, 117 So. 663, and Stith Coal Co. v. Alvis, 224 Ala. 603, 141 So. 663. Section 279(E), subd. 1, refers to a previous disability or injury; section 288, supra, re-

fers to a pre-existing injury or infirmity. See, also, Randle v. Dumas, 229 Ala. 396, 157 So. 218.

▉ We observe that section 279(E), subd. 1, was in our original Act of 1919, page 215, as section 13(e) 1, and section 288 was section 14 (20) of that Act, page 220. Our Act is supposedly taken from the Minnesota Act. We have noted section 4276, General Statutes of 1923, is much like our section 279(E), subd. 1, supra, relating to a previous disability or injury, but none as to a previous infirmity, using that term, as in section 288, supra. We do not know the source of that provision of the Act. As said in our cases with reference to this question, we have no doubt but that an accident is compensable though it operates upon a diseased condition, latent or patent, if without such disease it would have caused a compensable disability and is otherwise subject to the Act. But our inquiry is to what extent it is compensable in the light of sections 288 and 279(E), subd. 1, supra. We must give those statutes effect. We find no cases referring to such provisions. It is our view that they do not refer to latent conditions which may not spring into activity during the compensable period, and at the time of the accident are causing no apparent physical effect on the health or activity of the employee. We think the term disability in section 279(E), subd. 1, and infirmity in section 288, supra, refer to a condition which affects his ability to work as a normal man at the time of and prior to the accident, or which would probably so affect him within the compensable period. We think the trial court did not err in that respect.

There is another matter in this connection to which reference ought to be made in view of the opinion of the Court of Appeals in this controversy. Ex parte Ingalls Shipbuilding Corporation, 32 Ala. App. 609, 28 So.2d 808. That opinion shows that the Court of Appeals was of the opinion that because a petition was filed in the circuit court within thirty days after the order of approval, which petition prayed that the order be set aside for fraud, and such petition was acted on pursuant to section 119, Title 13, Code, as being in the

extended term there provided, the circuit court therefore had a right as in term time to set aside the order in the exercise of its discretion. It shows that the court did not find fraud to exist as alleged. But thought that the circuit court had the power in term time as extended by section 119, supra, to set aside without finding either a statutory or common law cause to do so.

▉ We think they were confused by the principle that in term time the court has the inherent power to grant a new trial and set aside a judgment. That means a power which exists independently of statute, but has no reference to the causes which will justify its exercise. 14 R.C.L. 688, section 140. But such inherent power may only be exercised for common law causes. One such cause is that the trial court has a definite and well-considered opinion from the evidence that the verdict failed to do justice. Schaeffer v. Walker, 241 Ala. 530, 531, 3 So.2d 405; Parker v. Hayes Lumber Co., 221 Ala. 73, 127 So. 504; Mixon v. Standard Tilton Milling Co., 30 Ala.App. 454, 7 So.2d 778; Batson v. State, 216 Ala. 275, 113 So. 300. The statutory causes are set out in section 276, Title 7, Code, and do not abrogate the common law causes. Parker v. Hayes Lumber Co., supra.

▉ But as to judgments by default, the power of the court in term time is discretionary, and not dependent upon either common law or statutory grounds. Ex parte Parker, 172 Ala. 136, 54 So. 572; DuPree v. Hart, 242 Ala. 690, 8 So.2d 183; Drennen Motor Co. v. Patrick, 225 Ala. 36, 141 So. 681. The same rule applies to non-suits. Harris v. Town of East Brewton, 238 Ala. 402, 191 So. 216. And the cases cited by the Court of Appeals justifying such power are those in which judgment by default or nil dicit was entered. Ex parte Doak, 188 Ala. 406, 66 So. 64; Ex parte Parker, 172 Ala. 136, 54 So. 572.

Section 764, Title 7, Code, would serve no purpose if the court could exercise a discretionary power to grant a new trial without good cause.

That statute was first enacted in 1891, —see, Code of 1896, section 434. As to that Act this Court in Truss v. Birming-

174

ham, LaGrange & Macon R. R. Co., 96 Ala. 316, 11 So. 454, 455, held that it was not intended to take away from nisi prius courts their inherent power in the exercise of a sound discretion to set aside defaults at the term at which they were entered. It only applies to appeals from decisions granting or refusing new trials. A default does not imply a trial. A new trial is there said to be a "re-examination of an issue of fact in the same court after a trial and decision by a jury or court or referees," and the purpose on appeal is to determine whether the trial court erred in granting or refusing a new trial; and that no such determination is applicable to a judgment by default rendered without a trial. Ex parte Gay, 213 Ala. 5, 104 So. 898.

In Colley v. Spivey, 127 Ala. 109, 28 So. 574, it is said that a motion to set aside a judgment by default is discretionary and not subject to review on appeal. To the same effect is Haygood v. Tait, 126 Ala. 264, 27 So. 842.

When a motion is made to set aside the approval of a settlement made under section 278, Title 26, supra, within the thirty day period, it is a motion for a new trial and is not limited to fraud, undue influence or coercion, but it may include any statutory ground,—section 276, Title 7, Code,—or. any common law ground, such as fraud, etc.,—49 Corpus Juris Secundum, Judgments, § 269, page 486, and it would be subject to the privileges of section 764, supra, and to the burdens of section 119, Title 13, supra. So that an appeal would lie under section 764, supra, But we have held that procedure for fraud, undue influence and coercion under section 278, Title 26, supra, is in many respects like our four month statute, section 279, Title 7, Code. Burger-Phillips Co. v. Phillips, 234 Ala. 563, 176 So. 181. In that case the approval was held February 18, 1935. On June 15, 1935, the employee filed a motion or petition to set it aside for fraud. This was more than Thirty days, and therefore not governed by section 119, Title 13, nor section 764, Title 7, supra. The Court held an appeal would not lie from an order granting the motion under that section, but being like the four month statute, the

judgment was reviewable by mandamus when the motion is granted. But fraud is a common law ground, as we have shown, and the judgment may be set aside on that or any other common law or statutory ground on a motion made in thirty days under section 119, Title 13, without regard to the four month statute or the limitations in section 278, Title 26, supra. An approval of a settlement under section 278, Title 26, as amended, supra, contemplates a trial of the matter also triable under section 304, Title 26, supra.

We wish at this time to make that situation clear as we think the proceeding on mandamus from the Court of Appeals was viewed with an erroneous idea of the power of a court in term time over its judgments, when it is not a judgment by default, or nil dicit, or non-suit. And also as to the right of appeal under section 764, Title 7, supra, when the motion is made and acted on. within the limits of section 119, Title 13, supra. This discussion is not necessary to the issues now before us, but we think it is appropriate in connection with and as a part of the history of this proceeding. The order of approval was set aside by a court with due authority, and therefore its order doing so is effectual.

The result is to affirm the judgment of the trial court.

Affirmed.

LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur.

GARDNER, C. J., and BROWN, J., dissent.

GARDNER, Chief Justice (dissenting).

I am persuaded the better reasoning and the better considered decisions noted in. the majority opinion, support the theory that the medical services discussed in this case do not constitute compensation payments within the meaning of our statute, and that the claim was barred, and was due to be disallowed. I therefore respectfully dissent.

BROWN, J., concurs in this view.

On Rehearing.

FOSTER, Justice.

Application for rehearing overruled.

BROWN, LAWSON, SIMPSON and STAKELY, JJ., concur.

GARDNER, C. J., and LIVINGSTON, J., dissent, for the reason stated in the former dissent prepared by GARDNER, C. J., herein set out.