MONROE, Judge.
The plaintiff, Deborah Johnson, appeals from the denial of her post-judgment motion filed in a workers’ compensation case.
The record reflects that Johnson sustained a twisting, crushing injury to her left hand and forearm on April 25,1994, while working with a machine on her job with Aladan Corporation. She sued Aladan on February 21, 1995, for workers’ compensation benefits. The parties agreed to a settlement; the court approved the settlement and entered a judgment on November 4, 1996. On November 25, 1996, Johnson, represented by a new attorney, filed a motion requesting the trial court to order a new trial or to alter, amend, or vacate the judgment. The trial court held a hearing on February 3 and 5, 1997, at which several witnesses testified. The trial court denied Johnson’s motion; she appealed.
A trial court’s ruling on a motion for new trial is discretionary and carries a presumption of correctness; its ruling will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows the trial court was in error. Johnson v. Cullman Medical Center, 615 So.2d 621, 623 (Ala.Civ.App.1992). In addition, our review of a trial court’s refusal to vacate a judgment is limited to determining whether the trial court abused its discretion. Warner v. Pony Express Courier Corp., 675 So.2d 1317 (Ala.Civ.App.1996).
The deposition of Johnson’s treating neurologist, Dr. Robert F. Allen, was taken on December 13, 1995. He testified that he diagnosed Johnson as suffering from reflex sympathetic dystrophy (RSD), which he described as a complication of the nerve damage Johnson had suffered to her left hand and forearm. He also testified that, as a result of the injury and resulting RSD, Johnson suffered a 35% permanent disability to the body as a whole, and that she had reached maximum medical improvement as to this condition.
On September 4, 1996, Aladan moved the trial court to order Johnson to have an examination by another neurologist. The court granted this motion, and Johnson was examined by Dr. James True Martin. Dr. Martin’s deposition was taken on October 16, 1996, by Aladan’s attorney. Dr. Martin testified that he agreed with Dr. Allen’s diagnosis of RSD and with his determination that this condition rendered her 35% disabled. However, he also testified that, when he examined Johnson, she was obviously “posturing” to the left with her head. He explained that this may be caused by a condition known as torticollis, a movement caused by the reorganization of the spinal cord as a result of chronic pain in the hand and the sensory impulses it generates. In addition, Dr. Martin testified that Johnson’s RSD was probably at stage 2 or 3, and that he had never seen anyone at this level of RSD return to active employment. Furthermore, Dr. Martin did not believe that Johnson had reached maximum medical improvement in relation to her possible torticollis.
The attorney who represented Johnson until the filing of her post-trial motion did not attend Dr. Martin’s deposition and did not order a transcript of the deposition. At the hearing on Johnson’s motion for a new trial, her former attorney testified that he had an agreement with Aladan’s attorney that he would participate in Dr. Martin’s deposition by telephone. Aladan’s attorney, however, testified that there was no such agreement. A representative from Johnson’s former attorney’s office did telephone Dr. Martin’s office in order to participate in the deposition, but she called one hour after the time scheduled for the deposition, at which time the deposition had already concluded. Ala-dan’s attorney testified that he informed the attorney’s representative that Dr. Martin had agreed with the 35% impairment rating and with Dr. Allen’s assessment of maximum medical improvement regarding her hand and forearm. He also testified that he did *1264 not discuss the possible torticollis with the representative.
Dr. Allen also testified at the hearing on Johnson’s motion. He testified that he had continued treating Johnson after giving his deposition in December 1995, and that she had since developed torticollis as a result of her hand and forearm injury. He described her condition as so severe that her neck was “about as stiff as I’d ever seen,” and that it was twisted so much that her left ear lobe almost touched her shoulder. According to Dr. Allen, there is no cure for torticollis but the condition can often be improved with repeated injections. He also testified that he believed Johnson had no chance of being able to return to work in the next three years and that she had only a 25% chance of returning to work after that. Johnson’s former attorney testified that, at the time of the hearing, he had not discussed Johnson’s condition with anyone from Dr. Allen’s office since taking Dr. Allen’s deposition in December 1995.
Johnson contends that she is mentally handicapped and testified that she had been enrolled in special education classes in high school. She testified that, when she signed the workers’ compensation settlement agreement, she believed that her painful condition could be remedied with shots and that she would be able to return to work. She also testified that it was only when she returned to her doctor for treatment after entering into the settlement that she was informed that she would not be able to return to work in the foreseeable future. Furthermore, Johnson testified that the torticollis had been causing her severe pain for several weeks and that she had been unable to work or to sleep.
In summation, the testimony showed that Johnson’s former attorney had not discussed his client’s condition with Dr. Allen since taking his deposition. He did not attend the deposition of Dr. Martin, and he did not review a transcript of Dr. Martin’s testimony. Johnson’s attorney did not know, when the settlement was executed, that she had developed torticollis and that both her treating neurologist and the neurologist who examined her at Aladan’s request had found that she had not reached maximum medical improvement as to the torticollis. In addition, her attorney was not aware that both physicians believed that it would be extremely unlikely for her to be able to return to work soon.
When one moves to set aside a judgment approving a workers’ compensation settlement, the bases for granting the motion are not limited to fraud, undue influence, or coercion, but can include any statutory or common law reason. Ingalls Shipbuilding Corp. v. Cahela, 251 Ala. 163, 36 So.2d 513 (1948); see also, Fabarc Steel Supply, Inc. v. Davis, 422 So.2d 797 (Ala.Civ.App.1982). One factor justifying relief is the judgment’s failure to do justice, in which case the motion for new trial should be granted if it is filed within 30 days. Holderfield v. Deen, 269 Ala. 260, 112 So.2d 448 (1959).
Based on the evidence presented to the trial court at the hearing, we conclude that the judgment approving the workers’ compensation settlement failed to do justice and that the trial court improperly denied Johnson’s motion.
Because we reverse on the basis of the judgment’s failure to do justice, we will not address the alternative bases for reversal that are presented by Johnson. They will, however, be addressed in the dissenting opinion.
The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.
Johnson’s motion to strike Aladan’s brief is denied.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.