MURDOCK, Judge.
This is an appeal from a judgment entered by the Mobile Circuit Court in favor of the employee, Claude Mizell, in a workers’ compensation case. The employer, Mobile County (“the County”), argues that it should not be liable for payments under Alabama’s Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”), because, it argues, Mizell’s injury is a preexisting physical ailment. However, the trial court found that Mizell was able to perform his duties before the on-the-job accidental injury and that, therefore, there was no “preexisting condition” for purposes of the Act. See Ingalls Shipbuilding Corp. v. Cahela, 251 Ala. 163, 36 So.2d 513 (1948).
The trial court found that Mizell was permanently and totally disabled as a result of the on-the-job injury. The trial court therefore awarded Mizell permanent total disability benefits under the Act. We find that there is substantial evidence to support the trial court’s findings regarding the injury and the preexisting condition, and we affirm the decision of the trial court with the exception of its calculation of the fees due to Mizell’s attorney and the resulting amount of compensation to be paid to Mizell.
Mizell was working as a road-grader operator for the County on September 21, 1999, when the grader ran over a tree stump and Mizell was thrown headfirst into the vehicle’s windshield, knocking him unconscious. The accident was sufficiently violent to break the blade of the road grader. As a result of this accident, Mizell suffered injuries to his head, neck, and shoulder.
The parties stipulated that the injuries arose out of and in the course of Mizell’s *309 employment with the County and that Mi-zell properly notified his employer of the accident. The parties further stipulated that Mizell had reached maximum medical improvement; that the physician authorized by the County pursuant to the Act had assigned a 4% permanent impairment rating to Mizell’s body as a whole as a result of the accident; and that Mizell was permanently and totally disabled following the accident. The parties also stipulated that Mizell’s average weekly wage was $575 and that, if he was found totally disabled, his rate of compensation would be $383.35 a week, which is two-thirds of his average weekly wage. They further agreed as to the amounts the County had paid Mizell under its injured-with-pay program for temporary total disability benefits under the Workers’ Compensation Act and for medical benefits.
For many years, Mizell has suffered from a debilitating progressive disease known as “thoracic kyphosis,” a curvature of the spine that causes him significant pain and discomfort. However, the trial court found that this condition had not prevented Mizell from performing his job duties satisfactorily up to and including the day of the accident. In addition to Mizell’s own testimony, Ronald Roberts, Mizell’s supervisor, testified that Mizell was an excellent employee, that Mizell worked at his job with no physical restrictions or special accommodations, and that Mizell missed fewer workdays than other employees.
The County was well aware of Mizell’s chronic condition. He had operated a road grader satisfactorily for many years, and he had done so for several years while wearing a back brace to work. Operating the road grader, Mizell maintained approximately 14 miles of roads in the County by himself. On cross-examination, Mizell testified:
“A: I made my day just like everybody else.
“Q: Okay. But your day was a little different from everybody else[’s], wasn’t it?
“A: Because I had the backache, that’s all.
“Q: Right.
“A: Because I worked just as hard and graded more roads than any other man in there. My boss will tell you that.
“Q: I don’t doubt that one bit. But you had to work a little harder because of the back pain, didn’t you?
“A: Yes, sir.”
The trial court found that following the accident Mizell was no longer capable of performing the duties required by his job. Roberts testified that Mizell had made a sincere but unsuccessful effort to return to work. Mizell testified that he was unable to return to his duties after the accident because of severe pain.
Mizell had been receiving treatment for the thoracic kyphosis for some time from Dr. Viorel Raducan, an orthopedic surgeon at the University of South Alabama. Dr. Raducan never assigned Mizell any work or activity restrictions because of his condition. Dr. Raducan did recommend spinal fusion as a possible course of treatment, but Mizell did not wish to have surgery. Approximately one month before the accident, Dr. Raducan noted that Mi-zell “may need to look into alternative sources of income if he finds himself .unable to proceed with the demands of his job” and recommended that Mizell inquire into applying for disability benefits.
On the day before the accident, Mizell did apply for disability retirement from the Retirement Systems of Alabama, but he testified that he did so only to see what *310 the payments might be. He testified that he wanted to receive his full retirement based on 25 years of service rather than take disability retirement and that he had applied for disability retirement only because he wanted to determine the difference between what he would receive as regular-retirement benefits and what he would receive as disability-retirement benefits. Mizell was never determined to be “disabled” or otherwise incapacitated before the accident.
Mizell continued to seek treatment from Dr. Raducan following the accident, and the doctor found that the accident did exacerbate Mizell’s previous symptoms. Dr. Raducan could form no conclusion as to whether the exacerbation was temporary or permanent, but he did state that the exacerbated symptoms, including additional pain and discomfort, were consistent with the injuries Mizell sustained in the September 21 accident.
The approved treating physician for Mi-zell’s injuries was Dr. Russell Hudgens, a board-certified orthopedic surgeon. Dr. Hudgens testified that, to a reasonable degree of medical certainty, Mizell had suffered permanent impairment of 4% to his body as a whole as a result of the accident. Dr. Hudgens noted that Mizell’s complaints of pain were consistent with the injuries Mizell incurred as a result of the accident and that Mizell continued to experience pain more than two years after the accident.
Dr. Hudgens obtained a magnetic resonance imaging scan that revealed a bulging disk in Mizell’s neck, which Dr. Hudgens stated was consistent with both the accident and Mizell’s complaints of pain. As a result, Dr. Hudgens testified that if Mizell were working up to the time of the accident, then the injuries resulting from the accident had accelerated Mizell’s symptoms so that he was not able to return to work.
Based on the testimony and evidence presented, the trial court found as follows:
“The court finds that the Plaintiff, as a proximate result of injuries suffered on September 21, 1999, arising out of an in the course of his employment, has sustained a permanent physical impairment to his body as a whole. While the physical disability assigned to the Plaintiff by his treating physician for this particular' injury is less than one hundred percent (100%), a finding of physical disability of the body as a whole does not necessarily coincide with loss of ability to earn in the same percentage. The court finds that the Plaintiff, as a consequence of his disability and physical restrictions, is permanently unable to return to his pri- or employment, and as a consequence of his age, education, work skills, and physical disability, is unable to be retrained for gainful employment. As such, the court finds that the Plaintiff has sustained a total loss of earning capacity and is permanently and totally disabled from gainful employment within the meaning of the State of Alabama [Workers’] Compensation Act.”
The standard of review in a workers’ compensation case was stated by our Supreme Court in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996):
“[W]e will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence-if that finding is supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
680 So.2d at 268-69 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)); see also § 25-5-81 (e)(2), Ala.Code 1975 (providing *311 that “[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence”). Our review of legal issues shall be without a presumption of correctness. “In reviewing the standard of proof set forth herein and other legal issues, review ... shall be without a presumption of correctness.” § 25-5-81(e)(1).
There is substantial evidence supporting the trial court’s findings of fact regarding both the extent of Mizell’s injuries and disability following his workplace accident and the extent of his preexisting condition, i.e., the thoracic kyphosis. The County argues that it is being held liable for Mizell’s preexisting illness contrary to the provisions of §§ 25-5-57(a)(4)e. and 25-5-58, Ala.Code 1975; however, the evidence indicated that Mizell was able to perform his duties for his employer before the accident, despite his condition. See Kimbrell v. White, 863 So.2d 105, 116 (Ala.Civ.App.2003) (holding that an employee should not be deemed to suffer from a preexisting infirmity for purposes of § 25-5-57(a)(4)e. and § 25-5-58, Ala.Code 1975, if the previous infirmity “ ‘has not demonstrated itself as disabling and has not prevented the employee from performing his job in a normal manner’ ” (quoting Holt v. Dunlop Tire Corp., 646 So.2d 74, 76 (Ala. Civ.App.1994))). Further, the trial court noted in its order that the County presented no evidence as to the percentage of impairment that it alleged might have existed before the injuries as a result of the thoracic kyphosis. Based on the record presented, we cannot say that the trial court did not have before it substantial evidence to support its judgment awarding Mizell benefits for a permanent total disability arising out of and in the course of his employment.
The only error in the trial court’s order was the way in which it calculated the attorney fees to be paid out of the future-compensation component of the award. Section 25-5-83, Ala.Code 1975, provides:
“By agreement of the parties and with approval of the court, the amounts of compensation payable periodically, under this article and Article 4 of this chapter, may be commuted to one or more lump sum payments. No commutation shall be approved by the court unless the court is satisfied that it is in the best interest of the employee or the employee’s dependent, in case of death, to receive the compensation in a lump sum rather than in periodic payments. In making the commutations, the lump sum payment shall, in the aggregate, amount to a sum equal to the present value of all future installments of compensation calculated on a six percent basis.”
In Ex parte St. Regis Corp., 535 So.2d 160 (Ala.1988), our Supreme Court explained the proper method of calculating an attorney fee on future benefits where, as here, the disabled employee’s compensation is to be paid to him in periodic payments over the course of his life:
“[WJhen the employer elects not to pay the full award of compensation in a lump sum, and the trial court orders a lump sum payment of the attorney fee (which represents up to 15% of the award), the provisions of § 25-5-83 providing for computation of present value are fully applicable to this part of the award.
“In the instant case, the trial court found that the employee had a life expectancy of 40.46 years, or 2111.145 weeks, and that the employee was entitled to weekly benefits in the amount of $194.00. Using the statutory annual discount rate of 6%, the present value of this payment stream is $153,801.50.
*312 “Section 25-5-90 allows the trial judge to ‘fix the fee of the attorney for the plaintiff for his legal services and the manner of its payment, but such fee shall not exceed 15 percent of the compensation awarded or paid.’ (Emphasis added [in Ex parte St. Regis ].) In the present case, the ‘compensation awarded’ is either a present payment of $153,801.50 (if both the employer and the employee agree, with approval of the court), or an annuity of $194.00 per week for the rest of the employee’s life. The compensation awarded is not $408,160.48; nor is the award $194.00 per week multiplied by the employee’s life expectancy of 2111.145 weeks. (‘Life expectancy’ is used as a means of fixing a definite period of payment for computing the lump sum fee.)
“The trial court decided to award a lump sum attorney fee; this award is statutorily limited to 15 percent of $153,801.50, which is the aggregate award reduced to its present value, resulting in a maximum attorney fee award of $23,070.22. By virtue of § 25-5-90, the employee is entirely responsible for the payment of the attorney fee; thus, the present value of the fee — $23,-070.22' — is deducted from the present value of the aggregate of the payments — $153,801.50—leaving the employee’s ‘life expectancy award with a present value of $130,731.28.
“Because it is clear from the stipulation of the parties that the employee was receiving the maximum benefits prior to the initiation of the suit, we hold that the employee’s lawyer is not entitled to any fee for the benefits received by the employee before the date of trial. If the attorney had earned a fee on the benefits paid, however, this fee would have to be borne by the employee and deducted from the amount of the compensation awarded. For example, if we assume that the lawyer in the present case had earned a fee on the benefits already paid, and that his fee was $2968.20 (15 percent of $19,788.00), this $2968.20 would then have to be deducted from $130,731.28, further reducing the present value of the employee’s award to $127,763.08.
“Once the present value of the compensation awarded has been reduced by the amount of the attorney fee, this reduced amount is then used to calculate, at the 6 percent annual discount rate, the amount of weekly benefits the employee is entitled to during the period of his life expectancy. In the instant case, using the $130,731.28 present value, and extending it over 2111.145 weeks at the 6 percent annual discount rate, the employee is entitled to weekly benefits in the amount of $164.90 for the term of his life expectancy.”
Ex parte St. Regis Corp., 535 So.2d at 161-62 (last emphasis added; footnotes omitted).
Both parties in the present ease agree that the trial court erred in simply ordering that Mizell’s attorney fee “shall be deducted from future compensation due [Mizell] at the rate of $57.50 per week (15% of each periodic payment made to [Mizell] until the amount equivalent to [the attorney-fee award] has been reached).” (Emphasis added.) Instead, in accordance with the Supreme Court’s opinion in Ex parte St. Regis, the County is responsible for paying Mizell his weekly compensation, $383.35, reduced by 15% ($57.50), for a net payment of $325.85, “for the term of his life expectancy” of SO.6 years. Thereafter, Mizell would be entitled to receive the full $383.35 amount of compensation. See Ex parte St. Regis, 535 So.2d at 162.
In addition to the foregoing, on remand the trial court must take into consideration the fact that this case has been pending on *313 appeal. In Ex parte St. Regis, the Supreme Court explained:
“The time periods utilized in this opinion were used as if the attorney fee was paid on the date the trial court entered its final judgment. Of course, the periods have changed during the pendency of this appeal. On remand, it is incumbent upon the trial court, with the aid of counsel, to determine the appropriate time period for calculating the present value, i.e., 2111.145 weeks less the number of weeks this case was on appeal. For the number of weeks this case was on appeal, the lawyer is entitled to a full 15 percent of the weekly benefits that were or should have been paid, without any reduction, because these payments have already accrued and are not due in the ‘future.’ ”
Ex parte St. Regis Corp., 535 So.2d at 163 n. 3. As in Ex parte St. Regis, the trial court in the present case, as part of its determination of the appropriate time period for calculating present value, must subtract the number of weeks this ease has been on appeal and, concomitantly, include in the fees awarded to counsel for Mizell a full 15% of the weekly benefits that were or should have been paid during the pen-dency of the appeal.
The trial court’s judgment as it relates to the award of an attorney fee is reversed, and the cause is remanded for the entry of a judgment calculating an attorney fee in accordance with Ex parte St. Regis. The judgment of the trial court is otherwise affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.