42 So.2d 626

**BALL v. STATE.**

**7 Div. 972.**

Supreme Court of Alabama.

June 30, 1949.

Rehearing Denied Nov. 17, 1949.

Beddow & Jones, Roderick Beddow, G Ernest Jones and G. Ernest Jones, Jr., all of Birmingham, for appellant.

688

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

LIVINGSTON, Justice.

Lonnie James Ball was convicted of murder in the first degree and his punishment fixed at death by electrocution. His appeal to this Court is under the pro-visions of, and controlled by, the automatic appeal statutes of this State.—Section 382 (1), et seq., Title 15, Code of 1940, Pocket Part.

The principal argument for reversal is directed to the refusal of the lower court to grant defendant's amended motion for a new trial.

We will first dispose of questions presented by the record other than those presented by the motion.

The record shows, without conflict in the evidence, that defendant killed Robert E. Sparks, the then chief of police of the municipality of Oxford, in Calhoun County, Alabama, by shooting him four times with a pistol. In the same affray another officer by the name of Billingsley was seriously wounded by defendant. As hereafter noted, the defendant interposed pleas of "not guilty" and "not guilty by reason of insanity".

The State's evidence tended to show that the fatal shooting took place in the vicinity of a store, with gasoline pumps in front, operated by one R. C. Cobb, and located in Oxford, Alabama. It is to the effect in the late afternoon of May 7, 1948, the defendant, in company with several other Negroes, arrived at Mr. Cobb's store in an automobile driven by a Negro woman, which was stopped near an air hose there. The defendant got out of the automobile for the purpose of putting air in the tires of the automobile. He began cursing and berating the other members of his party. Mr. Cobb, who was standing on the porch or stoop of his store remonstrated with defendant, and asked him to stop cursing or he would call the officers of the law. Defendant, in vile terms, informed Cobb of his utter disregard for the "law". Cobb went to the telephone in his store and called the officers. A man and woman, members of defendant's party, got out of the automobile and attempted to get defendant back in the car. Defendant struggled with them and disengaged himself from them. Another Negro man appeared upon the scene and after wrestling with defendant managed to hold him until Mr. Sparks, the deceased, and officer Billingsley, who had been called by Cobb, arrived.

These officers then took charge of the defendant, and placed him in the rear seat of the officers' car. Mr. Sparks then returned to the group in front of the store, a distance of just a few steps, apparently to ascertain whether or not any other persons were wrongfully involved in the difficulty, while officer Billingsley remained standing alongside the automobile in which defendant was seated. Defendant leaped from the officers' car and seized Billingsley. In the ensuing struggle defendant secured Billingsley's pistol. Defendant and Billingsley fell to the ground and as they fell one shot was fired. Four more shots were fired in fairly rapid succession. Billingsley was shot one time and Sparks, the deceased, four times. Defendant was then disarmed by other bystanders, and held until other officers arrived who took him in custody and to jail. Sparks died shortly after the shooting. His wounds were described by Dr. Neigs as follows: "I found five holes apparently produced by bullets. One was on the region of the upper abdomen, just below the ribs on the left side; one just above the heart on the left side; one through the neck on the left side; two through the right side of the chest—one was the point of entrance and one the point of exit."

Defendant's sole defense, insofar as the record discloses, was that he was drunk and did not know what he was doing, and had no recollection of the events surrounding the tragedy. In support of such theory, defendant introduced evidence tending to show that upon the day in question, about noon or a little after, the defendant drank about a pint of whiskey, and after picking up some members of the party who were with him at the time Sparks was killed, drove to the home of his brother, located some three or four miles below Oxford. That after arriving at his brother's home defendant drank a large quantity of home-brew: some of the witnesses stating the quantity to have been a gallon or more. Defendant testified that he had no recollection of events from some time in the afternoon of the day on which Sparks was killed until he awoke to find himself in jail the next morning.

■ The State called rebutting witnesses who saw the killing, or were at the scene shortly thereafter and saw and talked to defendant, and whose testimony tended to refute the defendant's claim of drunkenness to the point of reducing the crime from murder to manslaughter in the first degree.

Clearly the evidence presented a case for the jury, and no argument is advanced to the contrary.

■ No exceptions were reserved to the court's oral charge to the jury, and we are therefore not required to review it. —Easley v. State, 246 Ala. 359, 20 So.2d 519; James v. State, 246 Ala. 617, 21 So. 2d 847; Reedy v. State, 246 Ala. 363, 20 So.2d 528. Nor is a review sought of the trial court's refusal of any written charge requested by defendant.

Section 382(10), Title 15, Code (Pocket Part) provides:

"In all cases of automatic appeals the appellate court may consider, at its discretion, any testimony that was seriously prejudicial to the rights of the appellant, and may reverse thereon even though no lawful objection or exception was made thereto. The appellate court shall consider all of the testimony, and if upon such consideration is of opinion the verdict is so decidedly contrary to the great weight of the evidence as to be wrong and unjust and that upon that ground a new trial should be had, the court shall enter an order of reversal of the judgment and grant a new trial, though no motion to that effect was presented in the court below."

■ Although no argument is made in brief as to the admission or rejection of any evidence, we have, under the duty imposed by the foregoing statute, carefully examined the record for errors seriously prejudicial to the rights of appellant and have found none. We are also fully persuaded that the verdict of the jury is not so decidedly contrary to the great weight of the evidence as to be wrong and unjust.

As above stated, the principal argument for a reversal is directed to the overruling of defendant's motion for a new trial.

690

The questions presented on this aspect of the case are stated by counsel for the defendant as follows:

"Questions presented: 1. Appellant was denied a fair opportunity to secure counsel of his own choice to represent him in the trial of this case.

"2. The appointment of counsel to represent appellant upon the trial of this case was ineffectual.

"3. Appellant was denied that due process of law guaranteed him by the Fourteenth Amendment to the Federal Constitution and by Article 1, section, 6, of the Alabama Constitution of 1901.

"4. Appellant was denied the equal protection of the laws guaranteed by the Fourteenth Amendment to the Federal Constitution.

"Specification of errors: 1. The court erred in failing to make an effectual appointment of counsel to represent him during each stage of his case and to investigate his case.

"2. The court erred in refusing to continue appellant's case in order defendant might secure counsel of his own choice to represent him.

"3. The court erred in knowingly forcing appellant to trial, in an atmosphere of hostility, prejudice and resentment which the court itself recognized as existing.

"4. The court erred in refusing to continue appellant's case in order that material and helpful evidence might be investigated and presented in behalf of appellant upon the trial of his case.

"5. Appellant was denied a trial by a fair and impartial jury."

In order to fully understand counsels' insistence in this regard, we deem it necessary to disclose the sequence of events from the date of the homicide to the date of the trial, as shown by the record.

█ Sparks was killed on May 7, 1948. A regular grand jury of Calhoun County, Alabama, had been organized on April 26, 1948, and this grand jury on May 21, 1948, returned an indictment charging the defendant with murder in the first degree. On May 22, 1948, the defendant was arraigned. Upon arraignment, Judge Lamar Field, the trial judge, requested the Hon. Richard B. Emerson, a practicing attorney, to represent defendant upon arraignment. Mr. Emerson complied with the request and interposed pleas of "not guilty" and "not guilty by reason of insanity". Mr. Emerson at this time advised the court that he would be unable to represent the defendant upon the trial of the case. Judge Field and Mr. Emerson agreed in open court that the attorney or attorneys who did eventually represent the defendant upon his trial would have the privilege of withdrawing said pleas and proceed according to their own judgment in that regard. On June 1, 1948, Hon. Hugh Walker was appointed by Judge Field to represent the defendant upon his trial. Mr. Walker did accept the appointment and did represent the defendant upon his trial, which took place on the 7th and 8th days of June 1948. Mr. Walker's appointment was not in writing, nor do the minutes of the court show the appointment. But we know of no legal requirement in that respect, nor have we been cited to any authority to that effect. On June 11, 1948, Mr. Walker filed a motion to set aside the verdict and judgment and to grant the defendant a new trial. This motion was amended on July 3, 1948, and on August 10, 1948, and last amended on August 18, 1948. The motion was overruled on September 3, 1948. Judge Field died on June 18, 1948, pending the motion for a new trial, and Mr. Walker died after the motion for a new trial was overruled. Judge DeBardelaben heard the testimony in support of the motion for a new trial and overruled it.

The law firm of Beddow and Jones, of Birmingham, Alabama, represented defendant on the hearing of the motion for a new trial, and on appeal to this Court. The evidence introduced in support of the motion for a new trial discloses, in substance, the following: Beddow and Jones became at least interested in defendant's defense as early as May 16, 1948. On that date, which was Sunday, Mr. Beddow went out beyond Oxford, Alabama, and conferred with defendant's father and mother regarding his defense. On the next day, Monday, May 17, 1948, Mr. Beddow

called Hon. Joe Cockrell, the circuit solicitor of Calhoun County, relative to a preliminary hearing for the defendant. Mr. Cockrell advised Mr. Beddow that no preliminary hearing had been set; that the grand jury would meet that week. Mr. Beddow was again in Anniston sometime during the week immediately preceding the 31st day of May, 1948, and again consulted with defendant's father and mother at a restaurant located above the Anniston Star. Immediately prior to the arraignment of defendant on May 22, 1948, Judge Field called Mr. Beddow over the telephone and told him that he was going to arraign the defendant that morning and asked him if he wanted to be present. Mr. Beddow replied that he had not accepted employment in the case and could not act as counsel for defendant. Judge Field then asked Mr. Beddow what plea he would interpose if he did represent defendant, and Mr. Beddow replied "not guilty" and "not guilty by reason of insanity".

On the night of May 31, 1948, Judge Field, Messrs. Beddow and Jones, Mr. Cockrell and Hon. Ben Dorman, the county solicitor, held a conference at the courthouse in Anniston. At that time Mr. Beddow informed Judge Field that his law firm had not accepted employment in the case and would not do so unless the court would grant additional time for them to prepare for trial: the case then being set for trial on June 7, 1948. The reasons assigned by Mr. Beddow were, in short, that defendant had served in the Armed Forces of the United States in the South Pacific theatre of operations during the late War, and that he (Beddow) was informed and believed that defendant was mentally deranged because of such service and because of illness induced by and contracted during such service; that in the limited time (one week) they could not properly prepare for trial. Messrs. Cockrell and Dorman resisted the efforts of Messrs. Beddow and Jones to continue the case, if such efforts can be so considered, when, admittedly, at that time, Beddow and Jones did not represent the defendant but were only considering employment. At this conference, in resisting the efforts to continue, Mr. Dorman said:

"Judge, if this case is continued there never will be another Negro that kills a white man that will go to trial in Calhoun County." Judge Field, in refusing this continuance, said: "Roderick (Mr. Beddow) if I pass this case the people of this county will storm the jail." Judge Field declined to postpone the trial and Messrs. Beddow and Jones did not participate in the trial of the defendant. On June 1, 1948, the next day, Judge Field appointed Hon. Hugh Walker to conduct the defendant's defense.

We have by no means catalogued all the evidence submitted on the hearing of the motion for a new trial, but feel that the foregoing is sufficient for a decision of the questions presented.

■ Defendant first insists that he was denied a fair opportunity to secure counsel of his own choice to represent him in the trial of this case. We are not impressed with this insistence. Thirty days elapsed between the commission of the offense and the time defendant was put on trial. Within nine days, at most, from the time Sparks was killed the defendant's father and mother were in touch with and seeking the services of the law firm of Beddow and Jones. So far as this record discloses no stone was cast in the way of the employment of this firm, or anyone else. Indeed, we are clear to the conclusion that the trial judge did all he could to assist Beddow and Jones in that respect, save granting a postponement which, in the exercise of his discretion, he deemed unjustified under all the facts then before him.

■ The second insistence as stated in counsels' brief is: "The appointment of counsel to represent appellant upon the trial of this case was ineffectual." We do not think that counsel representing defendant on the motion for a new trial and in this Court intend to argue the relative abilities of the attorneys involved. Such a position would be obviously untenable, lest upon any further proceeding in the cause new and other counsel advance the same theory. The argument here, as we view it, is to bring the case within the principles enunciated by the Supreme Court of the United States in the case of

Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527.

We have carefully examined the evidence submitted on the motion for a new trial in the light of Powell v. State of Alabama, supra, and are of the opinion it presents no analogy to the Powell case. The appointment of Mr. Walker was far from a mere "empty formality". The record discloses that he was an attorney of more than forty years standing before the bar of this State. That immediately after his appointment he conferred with the defendant in jail and with his father and mother. That upon the trial of the case, lasting two days, he did his full duty, intelligently and well, and in so far as this record shows the results were for the lack of material on which to base a defense rather than the efforts of Mr. Walker.— Avery v. State of Alabama, 237 Ala. 616, 188 So. 391, Id., 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377.

Appellant insists that he was deprived of "due process" and "equal protection of the laws" guaranteed by the Fourteenth Amendment to the Constitution of the United States, in that, he was indicted by an all white grand jury and tried by an all white petit jury, citing Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76, 1 A.L.R.2d 1286.

In Vernon v. State, 239 Ala. 593, 196 So. 96, 99, this Court said:

"It is well settled that objections going to the formation of the grand jury which presented the defendant must be made by plea in abatement before pleading not guilty, and after so pleading, any such objection is addressed to the irrevisable discretion of the trial court. Nixon v. State, 68 Ala. 535; Jackson v. State, 74 Ala. 26; Hubbard v. State, 72 Ala. 164.

"So, also, that objections going to the venire of the petit jury or any member thereof, must be made before entering upon the trial of the case on its merits under the defendant's plea of not guilty, and a failure to make such objections constitutes a waiver. Peterson v. State, 227 Ala. 361, 150 So. 156. This rule has its exceptions as when the defendant is misled by the false oath and fraud of a venireman, and thereby induced to accept such venireman on the jury. 20 R.C.L. 242, § 27.

"It is not permissible for the defendant, who has not been so misled, to participate in the selection of the jury without objections, speculate on winning a favorable verdict, and failing to do so, allow him to raise such questions on a motion for new trial. Simpson v. Golden, 114 Ala. 336, 21 So. 990; Hoskins v. Hight, 95 Ala. 284, 11 So. 253; Barron v. Robinson et al., 98 Ala. 351, 13 So. 476; Fulwider v. Jacob, 221 Ala. 124, 127 So. 818."

In the Patton case, supra, the objections were timely and properly raised in the trial court. In the instant case they were not so presented. The defendant cannot be allowed to speculate on a favorable verdict, and failing therein raise the question for the first time on a motion for a new trial. No motion was made for a continuance of the cause.

As we have previously pointed out, an informal conference was held in the courthouse in Calhoun County on the night of May 31, 1948, and a continuance was discussed in connection with the prospective employment of Messrs. Beddow and Jones. These attorneys predicated their acceptance of employment upon the extension of time to prepare for trial. Judge Field declined to extend further time and the attorneys did not accept the employment. Such a proceeding does not rise to the dignity of a motion to continue; and, if it did, the record does not disclose such an abuse of discretion on the part of Judge Field as to amount to reversible error.—Avery v. State of Alabama, supra.

No motion was made for a change of venue.—See, Article 1, sections 6 and 75 of the Constitution of Alabama of 1901; also, Title 15, section 267 et seq., Code.

The defendant was incarcerated in the Calhoun County jail from the time he killed Sparks until the date of his trial. So far as this record shows there were no special guards, officers or state militia detailed to protect him, either before or at his trial: no demonstration or threats of any kind at any time were shown to have

been made against the prisoner. Certain remarks were attributed to Judge Field and county solicitor Dorman at the conference on the night of May 31, 1948, which we have quoted above: their making was not denied. But we must consider them in the light of the surroundings and circumstances of their making. They were but the expressions of opinion, not made in the presence of any juror or prospective juror and, in this respect, could not have weighed upon the jury's verdict. Moreover, so far as the record shows these opinions were not supported by the facts in the case. No bias, prejudice or partiality is attributed to Judge Field in the trial of the cause and none can be on the record before us.

Appellant on the motion for a new trial offered some evidence to the effect that his father and mother, and others, were not permitted to see or visit him in jail. This evidence was categorically denied by the sheriff.

We have carefully examined the entire record for reversible error and find none.

Affirmed.

All the Justices concur, except GARDNER, C. J., not sitting.

Roy D. McCord, of Gadsden, for appellants.