147 So.2d 836

Lloyd GRIGSBY, Jr.

v.

Charles W. LILES.

8 Div. 732.

Court of Appeals of Alabama.

March 14, 1961.

Rehearing Denied May 16, 1961.

Mandamus Denied on Mandate Dec. 11, 1962.

Potts & Young, Florence, for appellee.

E. B. Haltom, Jr., and Donald H. Patterson, Florence, for appellant.

HARWOOD, Presiding Judge.

On 27 November 1957, Charles W. Liles, who was then a minor, was riding as a passenger in an automobile driven by Lloyd Grigsby, Jr. Grigsby collided with a concrete guard rail, wrecking his automobile. As a result Liles, suing by his father and

next friend, filed suit against Grigsby on 26 November 1958, claiming damages for personal injuries received in the accident.

The complaint was in two counts, one charging simple negligence and the other count charging willful or wanton conduct. Liles being a guest in Grisgby's automobile would be within the operation of our "guest statute," and would therefore of necessity have to base his recovery on the willful and wanton count in the complaint.

On 9 March 1960, the case was called for trial on the jury docket of the Circuit Court of Lauderdale County, having been continued from 7 March 1960. On 9 March 1960, by consent of the plaintiff and the defendant and their respective attorneys of record, the court entered a consent judgment in the sum of $1,000 in favor of the plaintiff Liles and against the defendant Grigsby.

It appears that when the case was called for trial an eyewitness, Jesse Arlin "Red" Canerday, who had been subpoenaed as a witness by both the plaintiff and defendant, was not in court, although he had answered when the case was originally called on 7 March. The attorneys for the defendant asked the court for an attachment for the witness Canerday and the court advised the attorneys for the plaintiff that the court would use its processes to get the absent witness and that he might be there by the time he was needed.

Counsel for the plaintiff stated to the court that no other witness, other than the plaintiff and defendant, knew the facts as the witness Canerday. Repective counsel in the presence of the court then entered upon a discussion of a possible settlement of the case. In this connection, the court in its order setting aside and vacating the consent judgment made the following statement:

"On the morning of and during the 30 or 40 minutes the settlement was being discussed and effected, some of the plaintiff's witnesses,—particularly the eye witness, Canerday—were not present in the courtroom. It appears that the father of the minor defendant had stated in a country store that the case either would not be reached for trial or would probably not be reached for trial that day, and the word got to the witness Canerday and though he should have been in court; nevertheless, he was not in court. And his absence was through no fault of the plaintiff. The court being orally approached at the Bench on the matter of a possible continuance stated to plaintiff's attorney that the Court thought the case ought to be either settled or tried that day, and at least, made strong implications that a formal application for continuance would be refused. The settlement followed. It would appear that the minor plaintiff and his father feel that they have not had their day in court. And the court is apprehensive that the settlement might not have been entered into freely and voluntarily and without pressure."

On 11 March 1960, the defendant Grigsby filed a written motion praying that the court direct the clerk to enter and write up the judgment of the court pronounced by consent in open court on 9 March 1960, in favor of the plaintiff in the amount of $1,000, with cost taxed against the defendant. Subsequently thereto, the plaintiff Liles filed a motion praying that the consent judgment be set aside. On March 25, 1960, the motion of the defendant to have the consent judgment entered, and the plaintiff's motion to have said judgment set aside were heard together, and the defendant's motion to have the consent judgment written and entered was granted, and the plaintiff's motion that such judgment be vacated was set for further hearing to 6 April 1960, and on that date this motion was further heard and taken under advisement of the court.

On 18 April 1960, the plaintiff's motion to set aside the consent judgment was granted.

The motion to set aside the consent judgment contains some twelve grounds. We think a fair summary of these grounds is to the effect that: (1) the court abused its discretion in requiring the plaintiff to proceed to trial in the absence of any witnesses other than the plaintiff, (2) that the consent judgment is based on an agreement which resulted from surprise which ordinary prudence could not have guarded against in that defendant's attorneys had furnished plaintiff's attorneys with written statements from witnesses which statements were to the effect that the defendant was not guilty of willful and wanton conduct, whereas the witnesses would have testified to facts which would have tended to establish willful and wanton conduct, (3) that defendant's attorneys, in advising witnesses Brewer and Williams that they could be on call precluded plaintiff of an opportunity to confer with said witnesses, and, (4) the $1,000 judgment is so inadequate as to shock the conscience.

At the hearing on the motion to set aside the consent judgment, it was stipulated that the plaintiff and the defendant at the time of the trial were over twenty-one years of age.

The evidence submitted at such hearing, tends to show that upon being employed to represent the insurer of the defendant, and the defendant, the attorneys for the defendant proceeded to obtain written statements from several witnesses, which statements, as before state, tended to negative any willful or wanton conduct on the part of the defendant. These statements were sworn to before a notary public, and were obtained in good faith. We wish to make it clear that there is no charge of misconduct made against the attorneys for the defendant, and in fact they were only performing their duties consonant with their employment. It is the solemn sworn duty of an attorney to ascertain, so far as he can, what the evidence is, and his duty is not at an end when he has conferred with his client. He must see and talk with the witnesses. Golson v. State, 34 Ala.App. 396, 40 So.2d 725.

As these statements were obtained, copies were immediately furnished to the attorneys for the plaintiff, and this was some three to six months before the date of trial.

It also appears that the witness Canerday also gave to the defense attorneys two written statements, contradictory to the previous written statement given to the plaintiff's attorneys. A copy of these statements was promptly furnished by plaintiff's attorneys to the defense attorneys.

The medical reports of Dr. J. Ralph Rice, an ophthalmologist of Nashville, Tennessee, and of Dr. Shaler S. Roberts, an ophthalmologist of Florence, Alabama, concerning their examination of the plaintiff, made some time after the accident, were received in evidence. Dr. Rice was of the opinion that the plaintiff had a 10% loss of visual efficiency in his right eye, or a binocular deficiency of 3%.

Dr. Roberts assessed the plaintiff's visual deficiency at not over 5% of the time he was awake.

When the case was first called for trial on 7 March 1960, the witness Brewer, who had been subpoenaed by both the plaintiff and the defendant, was in court. Brewer worked at the Stylon plant. According to the record, the following is shown in connection with this witness:

"*Mr. Patterson*: Yes, sir, it was on Monday. Frank approached me and asked if Tommy Brewer had been here that morning. I told him he had been, and I told Frank the boy had been missing work and that I told him to go back to Stylon, and Frank didn't seem alarmed, but, as I remember, he shrugged it off and said, 'Well, I wanted to see him.' That was on Monday.

"*Mr. Potts*: I would like for the record to show that I was not apprised that he was working that day when the settlement was had, and I actually

didn't remember the place of employment that he mentioned that he was working on Monday, but on the day that the Court instructed us to go to trial I was not informed as to the whereabouts, but I was on Monday and that Mr. Patterson told him not to come in; but is is my understanding that the witness was here in court but we didn't know it. I admit what Don said, but that information wasn't given on Wednesday."

It should be noted that in the written sworn statement given by Brewer to defendant's attorney on 5 August 1959, he set out that he was employed by the Stylon Corporation, Plant No. 2, in the shipping department. A copy of this statement was furnished plaintiff's attorneys several months before the date of trial.

The witness Williams was a high school student, and arrangements had been made by defense counsel to have him on call. He had not been subpoenaed by the plaintiff, counsel for plaintiff stating they expected to have a subpoena issued for him at the time of trial.

Counsel for the plaintiff testified that during the discussion, on the day of the trial, relative to a possible settlement of the case, they conferred with the plaintiff and told him that in view of the absence of witnesses they were of the opinion that he might probably lose his case if they went to trial, and recommended that the settlement offer of $1,000 be accepted. The plaintiff was reluctant to accept such offer but upon insistence of his counsel he finally agreed to accept such offer. Counsel then returned to the courtroom, and announced the agreement for the consent judgment.

It further appears that very shortly after the consent judgment the plaintiff and his attorneys then interviewed several of the witnesses, whose statements had been furnished by the defense to the plaintiff's attorneys, and it was then first learned that these witnesses would testify differently from their sworn written statements.

■ Upon the entry of the order setting aside the consent judgment counsel for the defendant, being uncertain of the proper mode of obtaining a review, proceeded both by appeal and by a petition for an alternative writ of mandamus.

In Louisville & N. R. Co. v. Bridgeforth, 20 Ala.App. 326, 101 So. 807, this court held that an appeal would lie from an order setting aside a consent judgment. And in Senn v. Joseph, 106 Ala. 454, 17 So. 543, an appeal was entertained from an order setting aside a consent judgment with no allusion as to the proper review procedure.

However, in National Bread Co. v. Bird, 226 Ala. 40, 145 So. 462, 463, we find the following positive pronouncement:

"It is well settled that an order made by the circuit court, in the exercise of its plenary power, granting or denying a motion to set aside a judgment rendered in an action pending in said court, other than a motion for new trial where there has been a trial on the facts, will not support an appeal. Ex parte Gay (Sovereign Camp, W. O.W. v. Gay) 213 Ala. 5, 104 So. 898; Gibson v. Farmers' Bank of Luverne, 218 Ala. 554, 119 So. 664; Mosaic Templars of America v. Hall, 220 Ala. 305, 124 So. 879. The appeals must therefore be dismissed."

In view of the above pronouncement the appeal is dismissed, and our review will be upon the petition for an alternative writ of mandamus.

■ Historically, the overwhelming weight of authority is that consent judgments are construed as being contracts of the litigants, and not as judicial acts of the court, and as contracts they cannot be modified without consent of the parties.

In entering a consent judgment a court does not inquire into the wisdom of the bargain, nor of the facts at issue. The only question to be determined is whether the parties are capable of binding themselves

by consent, and have done so. Once these questions are decided, the court's function is ministerial. See 108 Univ. of Penn. Law Review, p. 178.

In State ex rel. Carmichael v. Jones, 252 Ala. 479, 41 So.2d 280, 286, the Circuit Court had refused to enter a consent judgment, the terms of which had been agreed upon by the respective litigants. In granting a writ of mandamus directing the court to enter the judgment as agreed upon, our Supreme Court wrote:

"Whatever may be the holdings elsewhere, this court has long been committed to the principle that the act of rendering a consent judgment, lawfully agreed upon between parties, sui juris, and within the jurisdiction of the court, is ministerial and not judicial as these terms are considered in that connection. Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550(4); Cowley v. Farrow, 193 Ala. 381, 383, 69 So. 114; Carr v. Illinois Central R. Co., 180 Ala. 159, 166, 60 So. 277, 43 L.R.A.,N.S., 634."

The rule that consent judgments are to be regarded as contracts does not apply to decrees in equity, the reason therefor being cogently stated by Justice Cardozo in the "Packers Consent Decree" case, United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 462, 76 L.Ed. 999, as follows:

"Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. * * * The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. * * *"

The Bridgeforth case, supra, involved a consent judgment agreed to by an intruding administratrix, whose appointment was procured without knowledge of the next of kin. Clearly there could be no valid consent under such facts, and the judgment was properly set aside. However, in the course of the opinion there are rather sweeping statements as to the power of a court to set aside consent judgments. Some of these statements are, in our opinion, too broad, and insofar as they conflict with our conclusions in the present case, they are hereby disapproved.

It is the clear doctrine of our cases that a consent judgment is in the nature of a contract between the parties, to which the court gives its formal approval administratively. A consent judgment waives all prior irregularities, and releases error, and cannot be set aside without the consent of the parties *in the absence of fraud, mutual mistakes, or actual absence of consent*. See Charles v. Miller, 36 Ala. 141; Davis v. McCampbell, 37 Ala. 609; McNeil v. State of Alabama, 71 Ala. 71; Ex parte Gresham, 82 Ala. 359, 2 So. 486; Curry v. Peebles, 83 Ala. 225, 3 So. 622; Senn v. Joseph, supra; Adler v. Van Kirk Land & Construction Co., 114 Ala. 551, 21 So. 490; Gunter v. Hinson, 161 Ala. 536, 50 So. 86; Cowley v. Farrow, 193 Ala. 381, 69 So. 114; Garrett v. Davis, 216 Ala. 74, 112 So. 342; National Bread Co. v. Bird, supra; Brasher v. First National Bank of Birmingham, 232 Ala. 340, 168 So. 42; Nixon v. Nixon, 245 Ala. 43, 15 So.2d 561; Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550; A.B.C. Truck Lines v. Kenemer, 247 Ala. 543, 25 So.2d 511; Gossett v. Pratt, 250 Ala. 300, 34 So.2d 145; Louisville & N. R. Co. v. Bridgeforth, supra; Heath v. Hall, 39 Ala.App. 623, 106 So.2d 38; Annotation, Power to Open or Modify Consent Judgment, 139 A.L.R. 421; 49 C.J.S. Judgments §§ 173–178; Black on Judgments (2d Ed.), Sec. 319, Consent Judgments, p.

484; Freeman on Judgments, 5th Ed., Sec. 1344–1352.

There is no charge of fraud in the procurement of the consent judgment in the present case. The situation pictured by the record is that of attorneys diligently and properly carrying out their duties, and that of some of the witnesses being of a type willing to make statements willy nilly, accommodating the last party who interviewed them.

Nor is there any evidence tending to show that the consent judgment was the result of mutual mistake.

"* * * A party to a contract cannot avoid it on the ground that he made a mistake where there has been no misrepresentation, and there is no ambiguity in the terms of the contract, and the other contractor has no notice of such mistake and acts in perfect good faith. A unilateral error, it has been said does not avoid a contract * * *. However, a unilateral mistake in the making of a contract, of which the other contracting party is entirely ignorant, and to which he in no way contributes, will not affect the contract, or afford ground for its avoidance or recission, unless it be such a mistake as goes to the substance of the contract itself. Not only must the mistake be material to the transaction, but the person who made the mistake must show * * * that his mistake is not due to want of care or diligence." Ex parte Perusini Construction Co., 242 Ala. 632, 7 So.2d 576, 578.

Further, "the law is well settled by a great many of our cases that it is not sufficient after the trial to set out to find what was really the truth." Waldrep v. Southern Railway Co., 266 Ala. 652, 98 So.2d 614, 617.

Clearly, there could be no basis under the evidence for setting aside the consent judgment on the ground of mistake.

Nor do we think any basis exists upon which it could be said there was any absence of actual consent. The plaintiff was over the age of twenty-one at the time the agreement for the consent judgment was made. He and his attorneys were aware of Canerday's contradictory statements, and of the medical reports as to plaintiff's injuries. While the plaintiff may have been reluctant to accept the offer of $1,000, it is clear that after full consultation with his attorneys he did accept the offer. That thereafter he discovered that some of the witnesses would testify in contradiction to their previous written statements, and which statements were in the hands of the plaintiff some three months before the trial, cannot be deemed to have affected his consent previously made.

In his order granting the motion to set aside the consent judgment the able trial judge expressed apprehension that the agreement for the consent judgment was entered into under pressure. This apprehension could only relate to the matter of the court insisting upon a trial of the case. This attitude of the trial court was correct. The consent judgment obviated all mistakes in the proceedings below. "Consensus tollit errorum." McNeil v. State, supra.

■■ Further, a motion for a continuance is an affirmative matter, and must appear of record. In its absence we cannot presume such motion was made. Hoskins v. Hight, 95 Ala. 284, 11 So. 253. See also Ball v. State, 252 Ala. 686, 42 So.2d 626.

■ One of the grounds of the motion to set aside the consent judgment was that amount of the judgment, i. e., $1,000, was so inadequate as to shock the conscience.

We find nothing in the evidence submitted in the hearing of the motion to sustain this ground. The degree of injury sustained by the plaintiff has already been referred to, and we will not again set forth such injuries.

It further appears from the record that Mr. Bert Haltom, a member of the firm

representing the defendant, testified that in the fall of 1959, the attorney for the plaintiff offered to settle plaintiff's claim for $1,000, and this offer was refused. This offer of settlement was renewed in February 1960, and again refused as, "I consistently told him I thought I could win the case. * * *" Mr. Haltom further testified that on the day of trial he informed the attorney for the plaintiff that he would not recommend settlement of the case for the sum of $1,000, but that the claim agent, and an attorney for the insurer were present, and he would submit the acceptance of the offer to them for determination.

No evidence contradictory of this testimony by Mr. Haltom appears in the record.

One further point we think should be discussed. In his judgment setting aside the consent judgment, the judge below set forth:

"Thus plaintiff's motion, as to the law applicable, is governed by that law applying to motions made within thirty days."

We are not in accord with this conclusion.

In Freeman on Judgments, 5th Ed., Sec. 1352, we find the following:

*"A judgment by consent is an exception to the rule that a court may modify its judgments during the term.* If it conforms to the agreement or stipulation, it cannot be changed or altered or set aside without the consent of the parties unless it is properly made to appear that it was obtained by fraud or mutual mistake or that consent was not in fact given, which is practically the same thing." Italics ours.

We are convinced, after study, that the rule announced above in Freeman on Judgments is implicit in the doctrines of our decisions.

From what we have said, it follows that a peremptory writ of mandamus is due to be awarded unless respondent, after being advised of this opinion, is content to vacate the order of 18 April 1960, setting aside the consent judgment.

Writ awarded conditionally.

On Application for Rehearing

HARWOOD, Presiding Judge.

In their brief in support of the application for rehearing, counsel have requested that we extend our opinion to show certain additional facts in order to afford a full review in event of certiorari. This we are glad to do.

In their brief counsel state:

"The Court on page 9 of its opinion intimates that one of the reasons for granting the Writ of Mandamus was the alleged failure of the record to show a motion by Appellee for a continuance. The Court does not set out any facts to justify an inference that no motion for a continuance was made. The record shows that the Appellee in open Court moved for a continuance of the case and the motion was resisted by Appellant's Attorneys. The affidavit of Appellee's attorney, Frank V. Potts, shows such motion and that 'appellant's attorneys then made strenuous objections to a continuance in said cause' (R. 33); and one of appellant's attorneys, Mr. E. B. Haltom, Jr., on the hearing testified that 'if Frank says that he moved for a continuance and the Court denied it, I will take it at face value. I remember that he talked to me about a continuance and I said I would resist it and the Court intimated it would not grant it.' (Tr. 112)."

In his affidavit introduced in hearing on the motion for a new trial Mr. Frank V. Potts, one of the attorneys for the plaintiff below sets forth:

"* * * When affiant asked the Court to call plaintiff's witnesses it was then learned that none of the witnesses which plaintiff had had sub-

poenaed was present in Court. Thereupon affiant stated to the Court that the plaintiff would be unable to go to trial in the absence of the witness, Jesse Arlin Canerday, who was a passenger in the automobile involved in the collision and the only eye witness who knew the same facts as the plaintiff and defendant. The defendant's attorneys then made strenuous objections to a continuance in said cause and stated to the Court at that time that they had three witnesses who would testify that the defendant was not weaving his automobile just prior to the accident. Affiant stated to the Court that plaintiff's right to recover depended upon proof of wilful or wanton conduct on the part of the defendant and that witness, Canerday, would testify that the defendant, Lloyd Grigsby, Jr., just prior to the accident was driving at a high rate of speed and was *purposely* weaving his automobile from one edge of the pavement to the other and that the plaintiff and the witness, Canerday, had asked him to slow down or he would kill them all. Defendant's attorney also at that time stated to the Court that the defendant had a sworn statement from the witness, Canerday, contradictory to the facts which affiant had stated to the Court that the witness, Canerday, would testify to. Thereupon the Court made the statement that perhaps the reason Canerday was not present in Court was because he realized that he made inconsistent statements. Affiant then told the Court that Canerday insisted that he had not made inconsistent statements. The Court then stated to plaintiff's attorney that they would have to proceed the trial notwithstanding the absence of witness, Canderday, and that at the time the Court instructed the plaintiff's attorney that they would have to immediately proceed to trial without the witness, Canerday, the plaintiff was his only witness in Court.
\* \* \*"

Also, in the hearing on the motion for the new trial Mr. Bert Haltom, one of the attorneys for the defendant below testified:

"A. It is my recollection that it was after our first conversation with the Court and whatever was said about a continuance was the first conversation. The Court didn't flatly say it would not grant a continuance if Frank asked for it, but it initimated it would not.

"Q. You mean Frank didn't ask for a continuance? A. I don't think he moved for it, but if Frank says that he moved for a continuance and the Court denied it, I will take it at face value. I remember he talked to me about a continuance and I said I would resist it and the Court intimated it would not grant it."

We do not yet think the above reflects a formal motion for a continuance, and did not set out these details feeling the statement of the court in its order which we set forth, setting aside the consent judgment, was a sufficient picture of the situation, the court in said order, stating:

"The Court being orally approached at the Bench on the matter of a possible continuance stated to plaintiff's attorney that the Court thought the case ought to be either settled or tried that day, and at least, made strong implications that a formal application for continuance would be refused."

■ Further, if the above proceedings rose to the dignity of a motion to continue, and we think not, the record does not disclose such an abuse of discretion on the part of the trial judge as to amount to a reversible error. Ball v. State, 252 Ala. 686, 42 So.2d 626.

Counsel in brief state that in our opinion we stated that the court "advised the attorneys for the plaintiff that the court would use its processes to get the absent witness Canerday," but complain that we did not show that prior to the settlement,

upon discovering the absence of Canerday, counsel for plaintiff made diligent effort to locate Canerday, calling his home and also a filling station where he frequently stopped, and were unable to locate him.

The efforts of counsel to locate the witness Canerday are set forth in the affidavit of Mr. Potts, above mentioned. The court then advised the attorneys it would use its processes to get Canerday into court. We do not see that the omission complained of by counsel for appellant is of useful materiality, but are glad to set forth the matter in more detail as requested.

In brief, counsel for appellees state:

"The opinion of the Court indicates that appellee failed to take prompt action to have said settlement vacated stating that appellee filed motion to set aside the consent judgment subsequent to defendant's motion to have clerk enter judgment. * * *"

We have carefully re-read our opinion in light of this statement by earnest counsel, and can find nothing indicating that we thought counsel had failed to take prompt action. While in his affidavit Mr. Potts states that before the opening of court on March 10, plaintiff's attorneys "advised the Court that the agreement to accept the $1000.00 was entered into under circumstances alleged in the motion and they requested that said agreement be held for naught and that if a judgment had been rendered pursuant to said agreement, that same be set aside and held for naught." Thereafter the motion was actually filed on 117 March 1960, as stated in our opinion.

Counsel for appellee also asks us to show that the witness Canerday, presented by the defendant below in the hearing on the motion for a new trial, testified as follows on direct examination:

"Q. You did sign it (referring to Canerday's written sworn statement given to appellant's counsel)? A. That's right. The statement is no good to me. It is not right."

* * * * * *

"Q. Do you state to the Court now that your statements contained in this two page statement were not given by you to Mr. Patterson back in August 1957? A. Well, that's not a right statement."

We think it should be further noted that Canerday testified; "I might have skimmed through it (the statement) but I am not sure," and, on whether he swore to the statement, "Well, I don't remember that one, but I do remember Mr. Pott's."

Mrs. Flora B. Cummings, a secretary in the office of appellant's attorneys, and a Notary Public, testified that she asked Canerday "point blank" before taking his acknowledgment to the statement if he knew "what he was signing; that he knew what the paper stated," and he said he did.

Counsel has also asked that we set out in detail the statements of several witnesses contained in affidavits given to counsel for appellee, and introduced in evidence at the hearing on the motion. All of these statements were obtained after the entry of the consent judgment. We think our summary in our opinion that these affidavits show these witnesses would have testified differently from their sworn statements is a sufficient reference to the contents of these statements. By this we mean that such statements would tend to establish that the defendant was guilty of wilful or wanton conduct.

Counsel also contend that the court at no time pronounced judgment pursuant to the agreement between the parties, but merely made a statement that the case had been settled between the parties, and neither made nor signed any bench note or entry from which a judgment could have been entered before plaintiff's attorneys made an oral motion the following morning that the agreement be held for naught.

We are in the dark as to counsel's expected contention in this regard. No argument touching this point was made in

brief upon original submission of this appeal. This in itself would preclude any point on this question being now raised.

██ Further, there is no law requiring a judge to make bench notes. Du Pree v. Hart, 242 Ala. 690, 8 So.2d 183. Also, in the order made on 25 March 1960, directing the clerk to proceed to the entering of the judgment, the court recited:

"It appears to the Court that on March 11, 1960, defendant herein filed written motion praying that the Court direct the Clerk to enter and write up the judgment of the Court pronounced by the Court by consent of plaintiff and defendant in open Court on March 9, 1960, in the amount of $1,000.00 in favor of the plaintiff and against the defendant, together with accrued costs taxed against the defendant. * * *"

The court in said order then directed the clerk to "proceed to the entering of said judgment by proper judgment entry in the permanent records of this court."

Pursuant to said order the following judgment, dated 9 March 1960, was entered:

"This day in open Court came the parties with their attorneys, and by consent of plaintiff and defendant made in open Court, the court by consent of both parties, on this day, entered a judgment in favor of the plaintiff and against the defendant for the sum of $1,000.00 and costs.

"It is therefore ordered and adjudged by the court that the plaintiff do have and recover of the defendant the sum of One Thousand Dollars, the amount of damages as so assessed by the Court, and all court costs in this cause created, for the recovery of which let execution issue."

██ A judgment entry speaks absolute verity. Ex parte McDermott, 224 Ala. 684, 141 So. 659. The correctness of this judgment has not been questioned by any proper proceedings, and an appeal is not the allowable method for correcting supposed errors or omissions of the officials of the trial court in the preparation and certification of the record for appeal. Gossett v. Pratt, 250 Ala. 300, 34 So.2d 145.

Counsel for appellee also complain that we ignored his contention as to the presumption to be accorded the court's ruling granting the motion to set aside the consent judgment. The authorities cited by appellee in this connection, with one exception, pertain to the lower court's ruling made in connection with a judgment obtained upon trial of the issues, and not with consent judgments.

The exception above noted from which counsel might obtain some comfort is Ex parte Ingalls Shipbuilding Corporation, 32 Ala.App. 609, 28 So.2d 808. However, it is to be noted that in Ingalls Shipbuilding Corporation v. Cahela, 251 Ala. 163, 36 So. 2d 513, 522, the Supreme Court commented as to the Court of Appeals' opinion as follows:

"* * * We think the proceeding on mandamus from the Court of Appeals was viewed with an erroneous idea of the power of a court in term time over its judgments, when it is not a judgment by default, or nil dicit, or non-suit."

We are clear to the conclusion, that likewise under the numerous authorities cited in our original opinion, that insofar as setting aside consent judgments, a court is limited to the grounds mentioned in our opinion.

Application overruled.

### After Remandment

JOHNSON, Judge.

██ In accordance with the mandate given us by the Supreme Court of Alabama, we have carefully reviewed the action of the trial court in setting aside the agreed judgment and the granting of a new trial which subsequently became the basis for

the petition of mandamus, and we find that such action did not constitute an abuse of discretion by the court or is plainly and palpably wrong.

Petition for mandamus denied.