The appellant was indicted and convicted for burglary in the third degree. Ala. Code § 13A-7-7 (Supp. 1979). Upon determination that appellant was a habitual offender pursuant to Code § 13A-5-9 (b)(1) (Supp. 1979), the trial court fixed his punishment at ten years and one day. This appeal primarily concerns procedural questions; therefore, a lengthy recital of the facts is unnecessary.
The State's evidence was sufficient beyond any reasonable doubt to prove that appellant instigated and participated in the February 28, 1980, burglary as charged. Appellant was accompanied by two juveniles. The trio had been drinking and "riding around" for several hours prior to appellant's encouraging the juveniles to commit the breakin. Appellant assisted and supported the juveniles by words and acts as was necessary in accomplishing the crime. In the words of one of the juveniles, "He put us up to it."
Appellant first let one of the juveniles out of his car with a tire tool which was used to break out a window, and he then rode around for a while with the other juvenile. Later, appellant let both juveniles out at the same residence to "get some more stuff" and then transported some of the stolen items to his house.
The next day the two juveniles made statements incriminating themselves and implicating appellant. Later that day appellant surrendered to authorities and signed a voluntary statement consistent with the juveniles' story, but denying his complicity in the actual burglary.
Suffice it to say, the jury verdict was well supported by the evidence. What follows is a discussion of the facts relevant to the procedural questions which are raised on this appeal.
Appellant was arraigned on September 23, 1980, and pled not guilty in the presence of counsel. At that time the trial court informed appellant his trial was set for October 27, 1980, stating, "Please be ready for trial at that time. It's your duty to be ready for trial." On October 29, 1980, appellant's case was called for trial, and defense counsel stated that he was ready to proceed. The jury was struck, empaneled, sworn, and sequestered. After the lunch recess, but before any witnesses were called, the following exchange occurred:
 "MR. WALKER: I'd like to — I don't think the record has indicated so far that I requested a continuance in this case —
"THE COURT: No, sir, it doesn't.
 "MR. WALKER: — Because of unavailability of one of the defense witnesses, Mike Horton, and I think this witness is possibly a very important witness to the case. I've just this week learned he's in custody of the State of Alabama. I have numerous times this week requested that this case be continued or that Horton be produced, and I also — I'd like to make an offer that if he were here his testimony would show that he and Neal Gamble and the defendant were riding around on the evening of February 28, 1980, and that Mike Horton asked the defendant to stop *Page 346 
his car in Sims Community, and that he and — that Mike Horton and Neal Gamble got out of the car and the defendant drove on and came back later and Horton and Gamble had a number of items of personal property laying [sic] in the ditch. The defendant refused to let them bring that personal property into his vehicle, but that Horton did bring in with him a small portable TV set and a clock radio. That a few minutes later, after the three had driven off, that the defendant stopped the vehicle and insisted that Horton remove the two items from the vehicle. That Horton did so. That Horton later tried to get the defendant to return to Sims Community to pick up the property left in the ditch there and that the defendant refused. That the defendant did not break into or enter the home there in the Sims Community that's the subject of this case, and neither did he encourage or seek to have Gamble or Horton to do so.
 "MR. THOMPSON: Judge, we could not agree for that showing to be admitted as such.
 "THE COURT: I think the showing comes too late. It should've been made to Judge Jetton when the docket was being called. We think the showing comes too late. We've already selected a jury and nothing was said about a continued [sic] except — as far as the Court knows, except in — at any time when the Court could officially consider it. Of course, I didn't manage the docket. Judge Jetton managed the docket. It doesn't appear here that anything was put in the record about it. All right, bring the jury in."
This is the only indication in the record before Judge Clark E. Johnson, the presiding judge at appellant's trial, that appellant sought a continuance in an attempt to procure Mike Horton as a defense witness.
Appellant was sentenced on December 19, 1980. That same day appellant's motion for new trial, which alleged among other things that he should have been given a continuance to procure the witness, was denied. Appellant then gave notice of appeal and was provided with a free transcript and counsel was appointed. The trial transcript was filed in this court on February 10, 1981.
On March 3, 1981, appellant's counsel filed the following motion under Rule 10 (f), Alabama Rules of Appellate Procedure:
 "Between the time this cause was called on the call of the docket on Monday, October 27, 1980, and the commencement of trial on October 29, 1980, certain things were done, motions made and rulings by the Court regarding the absence of a witness subpoenaed by the Defendant, and the record fails to reflect these matters.
 "WHEREFORE Defendant moves the Court that the record be amended so as to reflect said matters."
By order of the trial court, a hearing was set on this motion for March 23, 1981; the court reporter was directed to transcribe testimony at the hearing and to "correct the record herein to be added to the reporter's transcript for submission to the Appellate Court."
At the March 23 hearing Judge William D. Jetton made it clear at the outset that most of the communication to the court concerning the absent witness "occurred outside of the courtroom, in conversation":
 "The Court totally is without recollection of most of the matters except what happened that was told to you, Ms. Wells, that the Court does remembering [sic] happening.
 "Of course, we will allow you to put in any testimony that you might have. However, I am a little concerned and afraid that the matter of making a record is the responsibility of the attorney, and none of this — none of the matters concerning the witness was placed on the record at the time of trial."
James Dee Walker, appellant's trial counsel, was called as appellant's first witness. Mr. Walker testified that he answered docket call on Monday, October 27, 1980, and that he told the trial court at that time that he was not ready to try appellant's case without witness Mike Horton, that *Page 347 
Horton had been subpoenaed but was not present. "I believe the Court at some point that day issued a bench warrant or writ of attachment for that witness to a residence in Guntersville." Mr. Walker stated that later that day he found out that Horton was in custody at the youth facility at Mt. Meigs. Mr. Walker was emphatic that "on a number of occasions that day and the next morning, there were conversations at the bench, and I made known to the District Attorney and to the Court that I was not prepared to proceed without the witness." Mr. Walker admitted that a court reporter was not present on any of those occasions. Mr. Walker stated that on Monday the trial court "did not feel" that Horton's absence was ground for a continuance.
On cross-examination Mr. Walker testified that if he announced "ready" to the Monday docket call he later told the trial court he was not ready to proceed without Horton. Judge Jetton then interjected the following:
 "Let it be in the record that I think we should certainly be fair to the situation. The Court remembers Mr. Walker making those statements during the course of the day. The Court does not remember whether they were made in — at the bench, in chambers, in the hall, wherever, but I do remember him indicating that he was not ready without this witness — but after the docket call as I remember."
Mr. Walker testified that he had not talked to Horton at the time he made his requests to the trial judge for a continuance.
Deputy Sheriff Lacy Galloway of Marshall County testified that a writ of attachment was issued for Horton, but that he reported to the Judge "we could not find the boy."
District Attorney John W. Starnes of Marshall County testified that Sheriff Rex Smalley called him late Tuesday afternoon, October 28, 1980, and told him Horton had been "at the juvenile detention facility somewhere south of Montgomery, and there was no possible way he knew of at that point in time to go down to Montgomery unless he kept somebody up all night to go down there." Mr. Starnes stated that Mr. Walker had "announced ready on Monday morning without any reservation."
Judge Jetton entered the March 23 testimony as part of the record. The district attorney then objected:
"[T]he record speaks for itself.
 "[I]t is again doubly dangerous to try to amend something that does not transpire here officially before the Court when the Court is on the bench. . . . [A]nything that is of judicial importance, by necessity, has to be brought before the Court while the Court is in its official capacity to hear things."
Judge Jetton sustained the objection stating that "it is the burden of the attorney to make sure that it gets on the record." However, the court ultimately made the March 23 testimony part of the record for purposes of appeal.
In summary, we again point out that Judge Clark E. Johnson, Jr., presided over appellant's September 23, 1980, arraignment and October 29 trial. The only request for a continuance that was made to him came the day of trial after the jury had been empaneled and sworn. On the other hand, Judge William D. Jetton presided over the March 23, 1981, hearing, the October 27, 1980, docket call, and received the requests for a continuance on October 27 and 28.
 I
Rule 1 of the Alabama Rules of Appellate Procedure requires that the appellate rules "shall be construed so as to assure the just, speedy and inexpensive determination of every appellate proceeding on its merits." With this principle in mind, we hold that the supplemental record which is a transcript of the testimony and comments made at the March 23, 1981, hearing should be considered as part of the record on appeal based on the directives in Rule 10 (f), Alabama Rules of Appellate Procedure.
Rule 10 (f), as amended October 2, 1978, reads as follows: *Page 348 
 "If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court either before or after the record is transmitted to the appellate court, or the appellate court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the appellate court." (Emphasis added.)
By its plain wording Rule 10 (f) extends broad coverage and protection to the parties in having material omissions of "what occurred" added to the record. Moreover, Rule 10 (f) provides broad power in the appellate courts to direct that omissions be corrected and to determine "all other questions as to the form and content of the record."
While informal conferences with the trial court about the need for additional time to prepare do not constitute a motion for a continuance, Ball v. State, 252 Ala. 686, 42 So.2d 626,632 (1949), cert. denied, 339 U.S. 929, 70 S.Ct. 625,94 L.Ed. 1350 (1950), appellant was able to show at the March 23 hearing that he had on a number of occasions between docket call on October 27 and trial on October 29 had conversations "at the bench" informing the trial court and the district attorney that he was not ready to proceed without witness Horton. He also was able to show that Horton was subpoenaed on October 27. Although appellant's "requests" may not have been formally articulated as motions for a continuance, there is no question but that the requests were made and were tantamount to being motions for a continuance. The trial court concurred that appellant's requests had been made, although not on the record. Rule 10 (f) specifically authorizes the correction of an omission from the record. Pope v. State, 387 So.2d 300 (Ala.Cr.App. 1980).
The appellant and his counsel have the duty of checking the record before submitting the appeal. It is their duty to file a correct record. Tyus v. State, 347 So.2d 1377, 1380
(Ala.Cr.App.), cert. denied, 347 So.2d 1384 (Ala. 1977). Here, counsel for appellant waited some twenty-one days after the transcript was filed in this court before filing his Rule 10 (f) motion in the trial court. However, mindful that Rule 10 (f) provides broad leeway in making the record "conform to the truth," and mindful that the appellate rules "shall be construed so as to assure the just . . . determination of every proceeding on its merits," we have reviewed the March 23 proceedings as a part of the record for purposes of the remaining issue on this appeal.
 II
In deciding whether the trial court should have granted a continuance in order to procure Horton's attendance, it should be noted initially that a motion for a continuance in a criminal case is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed unless clearly abused. Fletcher v. State, 291 Ala. 67, 277 So.2d 882
(1973); Peaden v. State, 275 Ala. 72, 152 So.2d 136 (1963);Wilson v. State, 384 So.2d 1243 (Ala.Cr.App. 1980). This rule clearly applies to cases where the continuance is based on an absent witness. Fletcher; Bailey v. State, 398 So.2d 406
(Ala.Cr.App. 1981); Godfrey v. State, 383 So.2d 575
(Ala.Cr.App.), cert. denied, 383 So.2d 579 (Ala. 1980). Also see Stewart v. State, 398 So.2d 369 (Ala.Cr.App. 1981), cert. denied, 398 So.2d 376 (Ala. 1981). In Stewart a continuance was held properly denied where the appellant did not subpoena a defense witness until the Thursday before his trial on Tuesday. The reversal of a conviction because of the refusal of the trial judge to grant a continuance requires "a positive demonstration of abuse of judicial discretion." Beauregard v.State, 372 So.2d 37, 43 (Ala.Cr.App.), cert. denied, *Page 349 372 So.2d 44 (Ala. 1979); Clayton v. State, 45 Ala. App. 127, 129,226 So.2d 671 (1969). Counsel is expected to exercise diligence in preparing his case for trial and for procuring necessary witnesses. Godfrey, supra.
Thus, at best, appellant is faced with the heavy burden of overcoming the presumption in favor of the trial court's ruling in denying his motion for a continuance. This is so even if it is assumed that appellant has favorably shown that he has reasonably sought the witness's attendance, Palmer v. State,165 Ala. 129, 51 So. 358 (1909); has shown that the witness's attendance can be obtained within a reasonable time, Thomas v.State, 15 Ala. App. 408, 73 So. 558 (1916); and has shown that the absent witness's testimony will be material and not merely cumulative. Rogers v. State, 365 So.2d 322 (Ala.Cr.App.), cert. denied, 365 So.2d 334 (Ala. 1978).
Here, appellant did not show that he had sought the attendance of witness Horton until two days before trial, and the witness was not located until less than twenty-four hours before trial. Horton apparently was never served with the writ of attachment (subpoena) issued by the trial court on October 27. Appellant's subpoena for Mike Horton, which had been issued and executed earlier, had been issued for the wrong witness at the wrong address.
Furthermore, there was no real demonstration that Horton's testimony would not have been cumulative of that of Neal Gamble. There was no indication from any of the witnesses who testified at appellant's trial that Horton's version of what happened was different from the version of Gamble. Deputy Sheriff John Young testified that he had talked with both Horton and Gamble and that both juveniles made statements incriminating the appellant. Deputy Young stated that he was present when the juveniles were interviewed. He testified that "Each one of 'em told their story. They both accused Mr. Weaver, yes, sir." There was no indication at all as to what Horton's testimony would have been prior to trial. This is not a situation where defense counsel was required to vouch for the truthfulness of his client's affidavit. See Rogers, supra;Stovall v. State, 46 Ala. App. 181, 239 So.2d 323 (1970).
As was stated by the Court of Appeals in Thomas, supra:
 "Before it can be said that the accused has been denied this constitutional right, he must apply to the court for the issuance of an attachment and show to the court that the witness has been served with a subpoena a sufficient length of time before the trial to afford an opportunity to the witness to obey its mandate, that the witness is within the jurisdiction of the court, and that his attendance can be obtained within a reasonable time by the compulsory process, that such witness is absent without the procurement or consent of the accused, and that the testimony of the witness is material. . . ." (Citation omitted.)
It had previously been held by the Alabama Supreme Court inPalmer, supra:
 "We cannot say that the defendant was denied any constitutional right when the court refused to continue or postpone his trial in order that some of his witnesses might be brought into court by attachment. The Constitution provides that in all criminal prosecutions the accused has a right to have compulsory process for obtaining witnesses in his favor. This constitutional assurance is something more than an empty collocation of words. It secures an invaluable right, and its purpose is not to be served by an order for compulsory process made at a time and under conditions which indicate that such process cannot be executed in time to bring the witness to the trial. On the other hand, it is not to be so construed in practice as to permit the accused to secure delay by applying for process at the last moment. To fasten error upon the trial court, it must be made to appear that the application was seasonably made, and accompanied by a showing as to what the absent witness is expected to swear in order that the court may judge of its materiality. In the case at bar, the defendant made his application for process *Page 350 
after the state had announced ready for trial. This was upon the second judicial day of the week, and, while defendant's counsel stated to the court that the witnesses for whom process was desired were material witnesses for the defendant, it was not made to appear what the evidence was which counsel deemed material, nor that the application for process might not, in the exercise of diligence, have been made in time to secure its execution and the presence of the witnesses at the trial. . . ."
Appellant relies heavily on Stovall, supra, wherein this court observed that where a showing of an absent witness's testimony has been made and where that witness has been subpoenaed, the trial court should grant a defendant a continuance even if defense counsel has not talked to the absent witness. Appellant further relies on Rogers, supra, which in part reads:
 "Based on Stovall v. State, supra, where a motion for a continuance had been made in order to obtain an absent witness's presence in court, and that motion had been denied, the trial court should either allow the defense to make a showing by way of an affidavit indicating what the absent witness would say if he were present to testify, or grant his motion for a continuance. . . ."
These cases are distinguishable from the facts in the case at bar. In Stovall and Rogers the defendant made a showing by formal affidavit, apparently prior to trial, as to what the absent witness would testify. The trial court in Stovall
overruled the defendant's motion for continuance because defense counsel had not talked with the absent witness. SeeRogers, 365 So.2d at 330.
Here, appellant at no time presented a formal affidavit stating what he expected Horton's testimony to be. The only
"showing" made in this case was made by appellant's counsel, not the appellant himself, and was made after the jury had been selected, empaneled, and sworn before Judge Johnson. The supplemental record does not indicate that a showing of any type was ever made before Judge Jetton prior to trial after docket call on October 27, only that appellant was not ready to proceed without Horton. Thus, not only was appellant's showing not done by his own formal affidavit, but the "showing" made by defense counsel was untimely under the rationale in Palmer,supra.
In applying the foregoing principles of law to the facts in this case, we cannot say as a matter of law that the trial court abused its discretion in denying appellant's requests for a continuance.
AFFIRMED.
All the Judges concur. *Page 734